Filed 8/18/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEROY FONTENO, et al,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al,<br><br>        Defendants and Respondents. | A135577, A136359<br><br>(Contra Costa County<br>Super. Ct. No. C12-00203) |

In June 2011, defendant Wells Fargo, N.A. (Wells Fargo) foreclosed on the residential mortgage loan of plaintiffs Leroy Fonteno and Jeanette Childs and purchased their home at a trustee sale conducted by defendant First American Trustee Servicing Solutions LLC (First American). Plaintiffs sued, alleging, among other things, that defendants violated both their deed of trust's incorporation of a pre-foreclosure meeting requirement contained in National Housing Act (NHA) regulations and the Federal Debt Collection Practices Act (FDCPA). The trial court sustained defendants' demurrers and denied plaintiffs' request for a preliminary injunction, leading to this appeal. Plaintiffs argue numerous errors in these rulings.

We conclude that plaintiffs have pled viable causes of action for the equitable cancellation of the trustee's deed obtained by Wells Fargo based on their allegation that Wells Fargo did not comply with the NHA requirements incorporated into the deed of trust. Because compliance is a condition precedent to the accrual of Wells Fargo's contractual authority to foreclose on the property, if, as plaintiffs allege, the sale was conducted without such authority, it is either void or voidable by a court sitting in equity. Whether void or voidable, plaintiffs were not required to allege tender of the delinquent amount owed under the circumstances alleged in this case. Accordingly, the trial court

1

should not have sustained Wells Fargo's demurrers to plaintiff's wrongful trustee sale and quiet title causes of action without leave to amend. That part of the trial court's order is reversed. However, we affirm the remainder of the trial court's demurrer rulings.

## BACKGROUND

In January 2012, Wells Fargo filed a separate unlawful detainer action after purchasing the property at the trustee sale conducted by First American. It obtained a judgment against plaintiffs and a writ of execution enabling it to evict them from the property, located on Ashbridge Bay Drive in Pittsburg, California (property). In its statement of decision, the court concluded that the trustee's deed created a rebuttable presumption in favor of Wells Fargo as the owner of the property, plaintiffs had not established grounds for equitable relief, and having not shown fraud by Wells Fargo, were required to, but did not, make the requisite tender of the delinquent amount owed; also, plaintiffs' affirmative defenses, including Wells Fargo's failure to comply with the NHA and the federal Home Affordable Modification Program (HAMP), were not properly before the court, it being of limited jurisdiction. Plaintiffs then brought this action.

### *Plaintiffs' Original Complaint and Request for a Preliminary Injunction*

In their original complaint, plaintiffs alleged that Wells Fargo made a loan to them secured by the property pursuant to a deed of trust. It wrongfully caused First American to record a notice of default and notice of trustee sale, purchased the property at the non-judicial foreclosure sale which followed in June 2011, and obtained a trustee's deed to the property. Plaintiffs stated claims for wrongful trustee sale, quiet title, and breach of the FDCPA, naming Wells Fargo as the defendant in all of those claims and First American in the first and third.

Although not a model of clarity, plaintiffs alleged that Wells Fargo violated paragraph 9 of the deed of trust (paragraph 9) by failing to comply with the NHA, 12 United States Code section 1701 et seq., and related regulations. These included that Wells Fargo failed to meet with plaintiffs face to face to discuss alternatives to foreclosure, including the possible modification of the loan, and failed to secure the

2

approval of the Secretary of Housing and Urban Development (Secretary) before commencing with foreclosure proceedings. They further alleged that Wells Fargo was required to accept modifications to their loan pursuant to HAMP.

Plaintiffs also alleged that Wells Fargo did not comply with HAMP rules or the FDCPA, 15 United States Code section 1692, et. seq. They claimed Wells Fargo, as a debt collector under the FDCPA, provided misleading modification and forbearance agreements to plaintiffs. It falsely stated these agreements would enable plaintiffs to retain title and possession of the property by making certain fixed payments and successfully completing a trial period. Although plaintiffs signed the agreements and made all required payments, Wells Fargo caused First American to sell the property at a trustee sale and secured a deed of trust to it.

Plaintiffs alleged that First American, by acting as a debt collector, violated the FDCPA by not providing them with a debt collection notice, engaging in unfair debt collection practices, and selling the property with actual knowledge that plaintiffs were denied protections provided for in paragraph 9. Also, First American's recording of a notice of default was contrary to plaintiffs' contractual and legal rights.

Plaintiffs alleged that, as a result of defendants' wrongful acts, the trustee sale was improper and the trustee's deed was wrongfully executed, delivered, and recorded. In their first cause of action, for a wrongful trustee sale, plaintiffs sought an order allowing them to reside in the property during the litigation, cancellation of the trustee's deed, and an award of damages for breach of the FDCPA. In their second, for quiet title, they sought a declaration quieting title in their names and an accounting. In their third, for violation of the FDCPA, they sought an order setting aside the trustee's deed, damages, and attorney fees.

In their quiet title cause of action, and as incorporated into their FDCPA cause of action, plaintiffs further alleged that they were ready, willing, and able to make the payments required of them by the deed of trust, the amounts of which should be set pursuant to HAMP and related programs, but that Wells Fargo was insisting on excessive

3

monthly payments. Plaintiffs did not incorporate this allegation into their wrongful trustee sale cause of action.

Plaintiffs obtained a temporary restraining order barring enforcement of the unlawful detainer judgment and applied for a preliminary injunction. Defendants demurred and opposed the request for a preliminary injunction.

On March 26, 2012, the trial court heard argument on the demurrers and preliminary injunction at the same time, took the matters under submission, and subsequently ruled. It sustained Wells Fargo's demurrer without leave to amend regarding plaintiffs' quiet title cause of action because plaintiffs were required to make "a valid and viable tender of payment of the indebtedness owing in order to cancel a voidable sale under a deed of trust."

The court also sustained Wells Fargo's demurrer without leave to amend regarding plaintiffs' FDCPA cause of action. It concluded that nonjudicial foreclosure activities by lenders or their agents do not constitute debt collection activities within the meaning of the FDCPA.

However, the court sustained Wells Fargo's demurrer *with* leave to amend regarding its wrongful trustee sale cause of action. The court concluded that plaintiffs might be able to plead a viable cause of action for breach of contract resulting in a wrongful trustee sale if they sufficiently identified the federal law Wells Fargo was required to follow pursuant to the deed of trust. It granted plaintiffs leave to amend "to clarify the nature" of the first cause of action.

The trial court also sustained First American's demurrer without leave to amend. It ruled plaintiffs could not maintain a wrongful trustee sale cause of action against First American based on their deed of trust with Wells Fargo and did not allege a viable FDCPA claim against First American for the same reason they did not against Wells Fargo. The court also denied plaintiffs' motion for a preliminary injunction because plaintiffs' only potentially viable claim was for breach of contract against Wells Fargo, for which they had an adequate remedy at law for damages.

Plaintiffs filed a timely notice of appeal from the trial court's rulings.

4

### *Plaintiff's First Amended Complaint*

Plaintiffs also filed a first amended complaint, in which they brought a revised cause of action for wrongful trustee sale. They alleged Wells Fargo had violated an NHA statute requiring the exploration of alternatives to foreclosure and modifications of loans (12 U.S.C. § 1715u) and unspecified implementing regulations by not meeting with them, not obtaining the appointment by the federal Department of Housing and Urban Development (HUD) of a foreclosure commissioner prior to the property's sale, and not accepting loan modifications pursuant to HAMP.

Plaintiffs also alleged a cause of action for cancellation of the trustee's deed based on a consent judgment against Wells Fargo in another action (consent judgment cause of action). In this cause of action, they alleged that they were "ready, willing and able to make the payments required of them pursuant to this Deed of Trust, as appropriately modified pursuant to the Consent Judgment." Plaintiffs did not incorporate this allegation into their wrongful trustee sale cause of action.

Wells Fargo demurred to plaintiffs' first amended complaint; plaintiffs did not oppose. On July 24, 2012, the court sustained the demurrer without leave to amend in the absence of opposition and entered a judgment of dismissal. Plaintiffs filed a timely notice of appeal from this judgment as well.

### *Proceedings on Appeal*

The parties submitted one set of briefs for both appeals. During the pendency of this appeal, we granted plaintiffs' petition for a writ of supersedeas, which stayed their eviction from the property until the conclusion of this appeal. The parties also submitted additional cases and argument for our consideration after the briefing was completed. These included at our request that they focus on whether, assuming plaintiffs could bring a post-foreclosure cause of action to cancel the sale of the property, the deed was void or voidable and whether plaintiffs were required to allege tender of the delinquent amount owed to Wells Fargo. At oral argument, the parties addressed these issues and the matter was submitted.

# DISCUSSION

## I. *The Court's Demurrer and Preliminary Injunction Rulings*

### A. *Standard of Review for Demurrers*

In reviewing an order sustaining a demurrer "[w]e independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. [Citation.] Treating as true all material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory[.]" (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.)

We review the trial court's result for error, not its legal reasoning. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.) If a proper ground exists for sustaining the demurrer, we affirm "even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880, fn. 10.) On the other hand, "[i]f the complaint shows entitlement to relief under any possible legal theory, the trial court erred in dismissing the action." (*Castro v. Higaki* (1994) 31 Cal.App.4th 350, 356.) We also may consider new legal theories presented on appeal. (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1396.)

### B. *Plaintiff's Right to Seek Equitable Cancellation of the Trustee's Deed*

Plaintiffs first argue the trial court erred because they were entitled to seek the equitable cancellation of the trustee's deed obtained by Wells Fargo as void, based on this court's holding in *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250 (*Pfeifer*), issued a few months after the trial court sustained the demurrers below. Defendants argue plaintiffs do not have the right to pursue this affirmative claim after the trustee sale has been completed. We conclude that plaintiffs are entitled to seek equitable cancellation of the trustee's deed. We begin with a discussion of *Pfeifer*.

#### 1. *Pfeifer*

The Pfeifers, like plaintiffs here, were defaulting borrowers facing the nonjudicial foreclosure of their home by the defendants. They sued the defendants, bringing a variety

6

of claims seeking damages and, in a wrongful foreclosure cause of action, orders cancelling the notice of default and notice of trustee sale, and enjoining the nonjudicial foreclosure proceedings.  (*Pfeifer*, *supra*, 211 Cal.App.4th at pp. 1255-1256, 1258.)  They alleged defendants had not met the pre-foreclosure requirements outlined in the regulations of the Federal Housing Administration (FHA), the insurer of the lenders' mortgage.  These included that a lender's agent meet face-to-face with a defaulting borrower, or make a reasonable effort to do so, prior to commencing with any foreclosure proceeding.  (*Id*. at p. 1258.)[1]  The Pfeifers contended that this regulation was incorporated into paragraph 9 of their "FHA California Deed of Trust," which set forth the " 'grounds for acceleration of debt.' "  Its subdivision (d) stated, " 'In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.' "  (*Id*. at pp. 1258-1259.)

The trial court sustained the defendants' demurrer.  It concluded that the Pfeifers did not have a private right of action under "the federal loan/modification programs" they relied upon and failed to allege the requisite tender of the amount they owed on their secured debt.  (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1259.)

We reversed, concluding, as had other courts,[2] that, the subject HUD regulations, as incorporated into paragraph 9 of the deed of trust, were "conditions precedent that

---

[1]  In *Pfeifer*, we cited title 24 of the Code of Federal Regulations, part 203.604(b), which states that, except in circumstances not relevant to the Pfeifers (or plaintiffs here), " 'The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.  If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . .' (24 C.F.R. § 203.604(b).)" (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1266.)

[2]  These were *Mathews v. PHH Mortgage Corp.* (2012) 724 S.E.2d 196 (*Mathews*); *U.S. Bank, N.A. v. Detweiler* (2010) 946 N.E.2d 777, 783; *Lacy-McKinney v.*

7

must be followed before a mortgagee has the right to initiate a nonjudicial foreclosure on an FHA mortgage. Under the clear and unambiguous language in paragraph 9 of the deed of trust, the lenders had to comply with the HUD servicing regulations before commencing foreclosure on the Pfeifer[s'] FHA mortgage." (*Pfeifer*, *supra*, 211 Cal.App.4th at pp. 1277-1278.) These regulations included that " '[i]t [was] the intent of [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed' " (*id*. at p. 1277, quoting 24 C.F.R. § 203.500, "that '[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. . . .' ([24 C.F.R.] § 203.606(a))," and that the servicer must arrange, or make reasonable efforts to arrange, a face-to-face meeting with the borrower, before commencing with foreclosure (*Pfeifer* at p. 1266, citing 24 C.F.R. § 203.604(b)).

In reaching this conclusion, we relied heavily on *Mathews*, *supra*, 724 S.E.2d 196. The *Mathews* court concluded that a trustee's power to proceed with a nonjudicial foreclosure did not accrue until the conditions precedent regarding the HUD regulations established by paragraphs 9 and 18 of the FHA deed of trust were met. (*Pfeifer, supra,* 211 Cal.App.4th at pp. 1268-1269, 1277-1278.) We also determined that our conclusion was consistent with several decisions by foreign courts in the *judicial* foreclosure context. They held such HUD regulations "do not create an implied cause of action for damages, but may be used defensively as an affirmative defense to a judicial foreclosure action instituted by the creditor." (*Id.* at p. 1268.)

We rejected the argument of the defendants (and by Wells Fargo in an amicus curiae brief) that the Pfeifers could not maintain their private action because the lender duties outlined in the HUD regulations ran entirely to HUD, and not to a borrower. We concluded, "the issue is whether foreclosure is proper if the lender has not complied with the HUD servicing requirements *as set forth in the FHA deed of trust*. This does not

---

*Taylor, Bean & Whitaker Mortgage Corp.* (2010) 937 N.E.2d 853, 864; and *Bankers Life Co*. *v*. *Denton* (1983) 458 N.E.2d 203, 205. (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1277.)

require this court to enforce provisions of the NHA, but simply prevents a nonjudicial foreclosure when the borrower has an equitable defense based on the failure to comply with federal regulations designed to prevent foreclosures *that are incorporated into the FHA deed of trust*." (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1268, italics added.) We disagreed "that the purpose of the HUD servicing requirements is to benefit HUD exclusively" and concluded that "a significant purpose is to prevent foreclosures, which also benefits the borrower." (*Id*. at p. 1270.)

At the same time, we agreed "that a principal purpose of the HUD regulations is to benefit HUD," and "with the reasoning of those courts that hold that the Pfeifers cannot bring a private right of action against the lenders." (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1269.) Thus, we agreed that " 'the regulations . . . may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee.' " (*Id*. at pp. 1269-1270, quoting *Wells Fargo v. Neal* (2007) 922 A.2d 538, 546.) Therefore, we concluded, the Pfeifers could not pursue damages. (*Pfeifer* at p. 1281.)

We also rejected for multiple reasons the lenders' argument that the Pfeifers' wrongful foreclosure claim failed because they did not allege tender of the amount owed on their secured debt. (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1280.) We acknowledged the general rule that tender must be made to set aside a foreclosure sale, based on equitable principles, citing *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526. (*Pfeifer* at p. 1280.) However, we also acknowledged that "[c]ourts . . . have not required tender when the lender has not yet foreclosed and has allegedly violated laws related to avoiding the necessity for a foreclosure," citing *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 225-226 (*Mabry*). (*Pfeifer* at p. 1280.) Following *Mabry*'s reasoning, which we will discuss in our tender analysis, *post*, we concluded that the Pfeifers were not required to allege tender because "to permit a foreclosure when the lender has not complied with the requirements that may have prevented any need for a foreclosure would defeat a salient purpose of the HUD regulations." (*Pfeifer* at p. 1280.)

We also noted the Pfeifers argued that any foreclosure would be "void" based on the lenders' failure to comply with the HUD regulations. We indicated that "[c]ourts

9

have recognized various exceptions to the tender rule, including an exception based on the allegation that a foreclosure sale is void," such as in *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 877-878 (*Dimock*). (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1280.)

Finally, we observed that "[a] number of courts have explicitly held that the tender rule applies only in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place." (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1280.) We distinguished the cases cited by the lenders because they did not involve a challenge to a void sale or an objection to a foreclosure proceeding prior to a sale. (*Id*. at p. 1281.)

In the present case, plaintiffs' deed of trust[3] is the same in all material respects as the deed of trust we reviewed in *Pfeifer*. It states it is an "FHA California Deed of Trust" and contains an identical paragraph 9, which states that it "does not authorize acceleration or foreclosure if not permitted by regulations of the [HUD] Secretary." The relevant HUD servicing requirements also remain the same. (24 C.F.R. §§ 203.500, 203.606(a), 203.604(b).) Plaintiffs' allegations of wrongful trustee sale are similar to those made by the Pfeifers as well.

However, there is a factual difference between the two cases. The Pfeifers sued *before* the foreclosure sale of their property for an injunction that prohibited that sale from proceeding. Plaintiffs sued *after* First American's trustee sale of the property to Wells Fargo, and the related execution, delivery, and recording of a trustee's deed giving Wells Fargo ownership of the property. Therefore, we must analyze circumstances not present in *Pfeifer* to determine whether plaintiffs have brought a viable cause of action. They have.

---

[3] The trial court properly took judicial notice of the deed of trust and the other documents referred to herein at Wells Fargo's request. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 478, fn. 4.) The parties do not contend the court should have declined to do so, except as we discuss in subpart II. A, *post*.

10

### 2. *Plaintiffs' Claims for Equitable Relief*

Plaintiffs argue the trustee sale is "void" and, therefore, should be cancelled, without the need for any tender, pursuant to *Pfeifer* and *Dimock*, *supra*, 81 Cal.App.4th at pages 877-888. They argue the fact that their case arose after a trustee sale, rather than before, is "a distinction without a difference." At oral argument, their counsel also argued plaintiffs alleged a sufficient tender in any event.

Defendants argue plaintiffs have "sued too late to raise non-compliance with HUD regulations *defensively* to block either foreclosure or eviction," and cannot use "a sword to affirmatively invalidate the already completed foreclosure sale and recorded trustee's deed," as indicated in *Pfeifer*. They assert that California and other case law prohibit an action to undo a foreclosure sale as void based on non-compliance with HUD regulations, as does public policy, since "[t]he threat of such litigation would cloud title to residences for years." Wells Fargo's argument also suggests the trustee sale was at best voidable, requiring a tender that was not made by plaintiffs.

Aspects of both sides' arguments are problematic. Nonetheless, we conclude, based on *Pfeifer*, *Dimock*, and other case law, that plaintiffs have brought viable wrongful trustee sale and quiet title causes of action against Wells Fargo for the equitable cancellation of the trustee's deed. This is the case whether the sale is characterized as void or voidable, because tender is not required in this case.

### a. *Plaintiffs May Seek Equitable Relief After the Trustee Sale*

Contrary to defendants' contention that plaintiffs cannot pursue equitable relief in this post-trustee sale context, plaintiffs did not sue so late as to render their action a sword any more than did the Pfeifers. The fact that plaintiffs sued defendants, rather than raise an affirmative defense based on an alleged failure to comply with paragraph 9, is not a meaningful distinction. The Pfeifers also sued defendants. Indeed, both sets of plaintiffs were forced to do so in order to defend against defendants' actions. The Pfeifers could not have otherwise stopped a nonjudicial foreclosure; plaintiffs could not have otherwise stopped their eviction after the court in Wells Fargo's unlawful detainer action did not entertain equitable defenses and ruled against them.

11

The fact that plaintiffs seek the equitable cancellation of the trustee's deed is not a meaningful distinction either. The Pfeifers similarly sought to cancel recorded documents (a notice of default and a notice of trustee's sale). As we suggested in *Pfeifer* by our citation to *Dimock*, such actions may be brought, whether based on the theory that a sale is void or voidable. And as indicated by the discussion in *Dimock*, the question is not the viability of such an action, but whether tender is required.

Defendants assert California and other case law prohibit an action to *undo* a foreclosure sale based on non-compliance with HUD regulations. However, none of the California cases they cite consider whether the authority to conduct a nonjudicial foreclosure *contractually* accrued. Instead, these cases focus on whether a party had a private right of action or a particular remedy pursuant to statute, which is not the issue here. (See *Stebley v. Litton Loan Servicing, LLP*, *supra*, 202 Cal.App.4th at p. 526; *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1615-1617; *Mabry, supra,* 185 Cal.App.4th at pp. 235-236; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 800, fn. 6.) To be clear, we are being asked to permit enforcement of a contract, not a statute.

Defendants cite one case in support of their argument that does consider circumstances similar to those in the present case, *King v. Virginia Housing Development Authority* (Va.Cir.Ct. 2012) 2012 WL 6757265 (*King*), a Virginia circuit court decision.[4] The *King* court concluded that a party could not seek compensatory damages nor set aside a completed foreclosure sale to a third party because of the mortgagee's failure to conduct or arrange the HUD-mandated face-to-face meeting incorporated into the subject deed of trust. It sustained defendants' demurrer insofar as the borrower pleaded a violation of the relevant HUD regulation.

However, after the briefing was completed here, plaintiffs' counsel submitted for our consideration *Squire v. Virginia Housing Development Authority* (2014) 758 S.E.2d

---

    [4] Defendants also cite *Mikityuk v. Northwest Trustee Services, Inc.* (D.Ct. Ore. 2013) 952 F.Supp.2d 958. It is inapposite because its analysis is based on Oregon state statutes. (*Id.* at pp. 962-970.)

55 [287 Va. 507] (*Squire*). There, the Virginia Supreme Court reversed a portion of the *King* decision.[5] It concluded that a plaintiff could maintain a post-foreclosure sale breach of contract claim for damages against a mortgagee that did not comply with pre-foreclosure procedures incorporated into a deed of trust that appears to be the same as the one before us. (*Squire* at pp. 515-518.) The *Squire* court, relying heavily on *Mathews*, *supra*, 724 S.E.2d 196, the same case we relied on heavily in *Pfeifer*, reversed a portion of the circuit court decision because, it found, the plaintiff had sufficiently alleged breach of contract and breach of fiduciary claims based on the mortgagee's failure to hold the HUD-mandated face-to-face meeting incorporated into the deed of trust. (*Squire* at pp. 515-518.)[6]

Thus, *King* does not help defendants. In fact, plaintiffs' counsel cited *Squire* at oral argument as a reason why we should reconsider our conclusion in *Pfeifer* that "the Pfeifers cannot bring a private right of action against the lenders" and the HUD regulations " 'may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee.' " (*Pfeifer*, *supra*, 211 Cal.App.4th at pp. 1269-1270.)

We need not reconsider *Pfeifer*, but we clarify one aspect of that decision. Our analysis regarding the Pfeifers' private right of action was intended to address whether they could, in addition to pursuing claims for equitable relief, pursue affirmative claims for damages against the defendants. While we did not expressly state this intention, our holding makes it obvious. The Pfeifers were allowed to pursue equitable relief because, although brought as part of an affirmative claim for wrongful foreclosure, it was essentially defensive in nature, i.e., a proverbial shield, while their pursuit of damages was not allowed because it was offensive in nature, i.e., a proverbial sword.

---

[5] King passed away prior to the Virginia Supreme Court's decision in *Squire*. The court allowed Squire, the administrator of King's estate, to substitute for King in the case. (*Squire*, *supra,* 287 Va. at p. 511 and fn. 1.)

[6] The court also found that plaintiff had not pled sufficient facts to maintain a viable rescission of the sale claim under Virginia law for reasons not asserted in the present case and declined to address whether setting aside a completed foreclosure sale may be an appropriate remedy. (*Squire* at pp. 518-520 and fn. 3.)

13

We follow the part of *Pfeifer* that allows a party to pursue equitable relief. We have no need to reconsider its holding regarding a party's pursuit of damages because the only viable relief sought by plaintiffs in this case is equitable. They do not seek damages in their quiet title cause of action. They do allege damages in their wrongful trustee sale cause of action, but identify these only as "damages for the breach of the FDCPA." They also seek damages in their FDCPA cause of action, including for emotional distress, reasonable attorney fees, statutory damages, and such damages as proved at trial.[7] However, as we will discuss, plaintiffs' claims against defendants for FDCPA violations are not viable because plaintiffs did not allege that they engaged in practices constituting debt collection within the meaning of the FDCPA.

As previously noted, defendants also assert that concluding the trustee's deed is void under these circumstances violates public policy because "[t]he threat of such litigation would cloud title to residences for years." Such a public policy argument is best made to the Legislature, not the courts. We must follow the law as it exists. Furthermore, should a trustee's deed be voidable, rather than void, bona fide purchasers are generally entitled to keep the property purchased. (See, e.g., *Schiavon v. Arnaudo Bros.* (2000) 84 Cal.App.4th 374, 376.) Therefore, defendant's public policy argument is unpersuasive.

In short, the fact that the trustee sale was completed here does not bar plaintiffs from seeking the equitable cancellation of the trustee's deed.

### b. *No Tender Was Equitably Required in This Case*

We need not decide whether the sale challenged here is void or voidable because, assuming it is only voidable, plaintiffs were not required to tender under the circumstances of this case.[8]

---

[7] In their original and first amended complaints, plaintiffs also pleaded for "general and special and statutory damages according to proof." It is premature for us to further address this allegation.

[8] In *Dimock*, no tender was required because the deed in question was void. The case involved a trustee sale to a third party purchaser that was improperly conducted by a

14

At oral argument, plaintiffs' counsel asserted that plaintiffs sufficiently alleged tender. We disagree for two reasons. First, they did not make, or incorporate, *any* tender allegation in their wrongful trustee sale cause of action. Second, the "tender" allegations contained in plaintiffs' quiet title and consent judgment causes of action, which we have already summarized, indicate only that plaintiffs were ready, willing, and able to make certain limited payments based on their own view of the law, without further explanation. They do not allege they would be "ready, willing, and able" to pay the amounts due as determined by the court should their legal analysis be incorrect. Plaintiffs have shed no further light on these issues in their briefs or at oral argument. In other words, they fail to establish that their spare allegations satisfy the general tender rule.

Nonetheless, because we are obligated to determine whether any cause of action was or could have been properly pleaded (*Castro v. Higaki, supra*, 31 Cal.App.4th at p. 356), we conclude that, assuming the trustee sale is only voidable, tender is not required here. In *Pfeifer*, we alluded to "various exceptions to the tender rule," only one of which is if a foreclosure sale is void. (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1280.) Defendants acknowledge this is the case in their brief, stating "[t]here are several other exceptions to the tender rule," as stated in *Lona v. Citibank*, *N.A.* (2011) 202 Cal.App.4th 89 (*Lona*).[9] However, they contend plaintiffs do not argue they qualify, and they do not qualify, for an exception. We disagree.

party replaced as trustee, by means of a recorded substitution of trustee, prior to the sale. This substitution was unaccounted for in the trustee's deed. Dimock, the homeowner, sued after a foreclosure sale of his property. The appellate court ordered that judgment quieting title be entered in Dimock's favor because the party replaced as trustee, who conducted the trustee sale, had no power to convey Dimock's property. (*Dimock, supra,* 81 Cal.App.4th at pp. 874-876.) It concluded that the challenged conveyance was void because the recorded trustee's deed did not evidence any conclusive presumption of regularity regarding the sale and the recorded documents indicated the selling trustee, having been replaced, was not authorized to conduct it. (*Id.* at p. 878.) Therefore, Dimock was not required to tender any of the amounts due under the note. (*Ibid*.)

[9] While the *Dimock* court did not mention these exceptions, defendants have not indicated that any California case holds that they do not exist. Nor are we aware of any such case.

Defendants are correct that plaintiffs do not expressly allege or argue that they qualify for an exception to the tender rule. However, plaintiffs' pleading allegations of what they are "ready, willing, and able" to pay, although flawed, and their argument that these allegations are a sufficient tender, are essentially contentions that it is not fair to require a full tender. Also, their reliance on *Pfeifer* to argue that they may seek the equitable cancellation of the trustee's deed incorporates our reasoning there for why tender was not necessary.

Excusing tender based on equitable considerations is one of the exceptions to the tender rule discussed in *Lona*. Specifically, "a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." (*Lona*, *supra*, 202 Cal.App.4th at p. 113.) Without citing this exception, we reasoned in *Pfeifer* that it would be inequitable to require tender because it would defeat a salient purpose of the HUD regulations, to prevent foreclosures. (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1280.) This same salient purpose exists post-foreclosure, and none of the post-foreclosure cases we cited in *Pfeifer* indicate otherwise.

A very similar conclusion was reached by the appellate court in *Mabry*, which we relied on in *Pfeifer*. *Mabry*'s reasoning applies equally to the current case. The Mabrys were borrowers who sought a restraining order to prevent their lender from proceeding with a foreclosure sale of their home. (*Mabry*, *supra*, 185 Cal.App.4th at pp. 215-217.) They contended their lender had not complied with a provision of Civil Code section 2923.5 that required the parties to discuss the borrower's financial situation before filing a notice of default,[10] a provision similar to the HUD face-to-face meeting requirement incorporated into paragraph 9 of the deed of trust at issue here.

_____

[10] Specifically, at the time of the *Mabry* decision, Civil Code section 2923.5 required, "before a notice of default [against a borrower] may be filed, that a lender contact the borrower in person or by phone to 'assess' the borrower's financial situation and 'explore' options to prevent foreclosure." (*Mabry*, at pp. 213-214.) This contact is required of a "mortgage servicer" in the present version of Civil Code section 2923.5. (Civ. Code, § 2923.5, subd. (a)(2).)

16

The trial court rejected the Mabrys' arguments for a restraining order, in part because they "were required to at least tender all arrearages to enjoin any foreclosure proceedings." (*Mabry*, *supra*, 185 Cal.App.4th at p. 217.) The Fourth Appellate District disagreed. It issued a writ of mandate to the trial court after determining that the Mabrys were *not* required to allege tender. It reasoned, "Case law requiring payment or tender of the full amount of payment before any foreclosure sale can be postponed [citation] arises out of a paradigm where, *by definition*, there is no way that a foreclosure sale can be avoided absent payment of *all* the indebtedness. Any irregularities in the sale would necessarily be harmless to the borrower if there was no full tender. [Citation.] By contrast, the whole point of [Civil Code] section 2923.5 is to create a new, even if limited, right to be contacted about the possibility of *alternatives* to full payment of arrearages. It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender." (*Mabry*, *supra*, 185 Cal.App.4th at p. 225.)

We adopt the rationale of *Pfeifer* and *Mabry* in the present case. Plaintiffs here are not required to tender payment of the delinquent amount owed on their secured debt in order to seek the equitable cancellation of the trustee's deed. To do so would be to defeat the purpose of paragraph 9 of the deed of trust and the relevant HUD regulations. The parties agreed that, should plaintiffs default, they would attempt to meet face-to-face to discuss loan modifications before any authority to foreclose accrued. Obviously, this provision was intended to govern a circumstance in which plaintiffs could not make full payment of the delinquent amount owed. In other words, defendants could not proceed with foreclosure without first attempting to discuss alternatives with plaintiffs, even though plaintiffs could not tender the full amount owed. To require plaintiffs now to make such a tender in order to obtain cancellation of a sale allegedly conducted in disregard of this condition precedent and without any legal authority is inequitable under the circumstances. (*Lona*, *supra*, 202 Cal.App.4th at p. 113.) Therefore, plaintiffs were not required to do so to plead claims for equitable relief.

For these reasons, we reverse the trial court's order sustaining without leave to amend Wells Fargo's demurrers to plaintiff's wrongful trustee sale and quiet title causes

17

of action. We affirm the trial court's order sustaining without leave to amend Wells Fargo's demurrer to plaintiffs' consent judgment cause of action because plaintiffs give us no reason to reconsider that ruling. We also affirm the trial court's order sustaining without leave to amend First American's demurrer to the wrongful trustee sale cause of action because plaintiffs do not allege that First American is a party to the deed of trust; instead, their allegations are that First American violated the FDCPA.[11] As we now discuss, this allegation, and plaintiffs' FDCPA cause of action, are not viable claims.

**C. *Plaintiffs' FDCPA Cause of Action***

Plaintiffs argue the trial court erred in sustaining Wells Fargo's and First American's demurrer to their FDCPA cause of action for multiple reasons. They invite us to reconsider our conclusion in *Pfeifer* that a person engaging only in activities leading towards a foreclosure sale as required by California law is not a "debt collector" under the FDCPA. (*Pfeifer*, *supra*, 211 Cal.App.4th at pp. 1261-1264.) Plaintiffs do not give us a good reason to do so. Therefore, we decline their invitation.

The FDCPA defines "debt collector" in relevant part as "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." (15 U.S.C. § 1692a(6).) Plaintiffs alleged in their original complaint that First American was a debt collector under this definition because its "principal business" was the collection

---

[11] Plaintiffs also pled somewhat inconsistent allegations regarding HAMP, including that they complied with its requirements and that they did not have the opportunity to do so. In their briefing, letter submissions to this court, and at oral argument, they have referred to HAMP, but have not provided pertinent legal argument regarding its significance, if any, to the court's demurrer ruling. Therefore, we do not further consider the issue. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 [issues unsupported by pertinent or cognizable legal argument may be deemed abandoned].) By doing so, we do not mean to imply that plaintiffs cannot request leave to amend to properly allege a HAMP claim after remand if they can do so consistent with the obligations stated in Code of Civil Procedure section 128.7, subdivision (b). (See, e.g., *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299.)

18

of delinquent debts from borrowers such as plaintiffs, and it began its debt collection activities after plaintiffs were in default, including by use of the United States mail. Therefore, First American was required to, but did not, provide plaintiffs with a debt validation notice as required by the FDCPA (15 U.S.C. § 1692g). It also allegedly breached other FDCPA obligations "by taking nonjudicial actions to effect the dispossession of plaintiffs from the subject property contrary to plaintiffs rights under paragraph 9 in the deed of trust and other provision of law such as Cal Civil Code [section] 2923.5 and 6. Thus, First American recorded the Notice of Default contrary to each of these provisions of federal and state law."

Plaintiffs' "debt collector" contentions rest on their theory that "First American's principal business IS debt collection *by processing non-judicial trustee sales*." (Italics added.) They contend all of the appellate authority since *Pfeifer* supports this theory, in effect arguing that we reached the wrong conclusion in *Pfeifer*, as did the trial court below.

Plaintiffs fail to provide persuasive authority for their argument. They cite two cases in their opening brief. In the first, *Schlegel v. Wells Fargo Bank* (9th Cir. 2013) 720 F.3d 1204 (*Schlegel*), the Ninth Circuit concluded that the Schlegels, defaulting borrowers, did *not* make allegations sufficient to establish that their lender, Wells Fargo, qualified as a debt collector under the FDCPA. (*Id*. at pp. 1208-1210.) Even if they had, the court's discussion of the Schlegels' complaint indicates they alleged Wells Fargo made repeated demands for loan payments as well as initiated foreclosure proceedings. (*Id*. at pp. 1206-1207.) Plaintiffs do not contend First American took such actions. Therefore, *Schlegel* does not afford plaintiffs legal support and is inapposite.

Plaintiffs also cite *Glazer v. Chase Home Finance LLC* (6th Cir. 2013) 704 F.3d 453 (*Glazer*). The *Glazer* court held that "mortgage foreclosure is debt collection under the FDCPA." (*Id*. at p. 461.) However, the *Glazer* court's analysis in support of this conclusion is not novel. To the contrary, the court relied heavily on two cases that were issued prior to *Pfeifer*, *Wilson v. Draper & Goldberg, P.L.L.C.* (4th Cir. 2006) 443 F.3d 373 (*Wilson*) and *Piper v. Portnoff Law Associates, Ltd.* (3d Cir. 2005) 396 F.3d 227. In

19

our discussion in *Pfeifer*, we indicated that we considered, and rejected, the *Wilson* court's conclusion. (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1263, fn. 4.) Instead, we agreed with the conclusion reached in the majority of other federal district court cases, such as *Hulse v. Ocwen Federal Bank, FSB* (D.Or. 2002) 195 F.Supp.2d 1188. (*Pfeifer*, at p. 1263, fn. 4.) The *Glazer* court both acknowledged *Hulse* (with which it disagreed) and that the majority of federal district courts have held that mortgage foreclosure is not debt collection. (*Glazer*, *supra*, 704 F.3d at p. 460.) We are not required to follow *Glazer*. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58 [noting that "[w]here lower federal precedents are divided or lacking, state courts must necessarily make an independent determination of federal law' "].) Its analysis does not give us cause to rethink our conclusion in *Pfeifer*.

In their reply brief, plaintiffs argue *Pfeifer* is distinguishable from their allegations because we did not consider in that case whether such persons could also be liable for engaging in unfair, or deceptive debt collection practices prohibited by sections 1692e and 1692f of title 15 of the United States Code, which are also part of the FDCPA. However, although plaintiffs alleged First American violated section 1692f(6) (but not section 1692e), they defined these purported violations as actions taken regarding foreclosure. Therefore, this argument is unpersuasive as well.

Plaintiffs also contend First American was acting as a debt collector based on the notice of default it sent them as agent for beneficiary Wells Fargo. According to plaintiffs, First American stated in the notice that it "was acting as a Debt Collector attempting to collect a debt" in capital letters and boldface type. Plaintiffs argue this notice was similar to that found to be a basis for a "debt collector" finding in *Reese v. Ellis Painter Ratterree & Adams* (11th Cir. 2012) 678 F.3d 1211 (*Reese*), which we also discussed in *Pfeifer*.

We disagree. As we discussed in *Pfeifer*, the *Reese* court considered documents that stated the law firm in question " ' "IS ATTEMPTING TO COLLECT A DEBT" ' " and that " ' "THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT." ' " (*Pfeifer*, *supra*, 211 Cal.App.4th at p. 1263, fn. 4, quoting

20

*Reese*, *supra*, 678 F.3d at p. 1217.) The pertinent statement in First American's notice of default to plaintiffs states, in capital letters and boldface type, that First American, as agent for the beneficiary, "*may* be acting as a debt collector attempting to collect a debt. Any information obtained *may* be used for that purpose." (Italics added.) The difference between the two statements is critical. The latter statement only contemplates the possibility that First American was acting as a debt collector, not that it was doing so. Again, plaintiffs do not contend First American did anything other than seek to foreclose on the property. We conclude this notice statement alone does not convert First American into a debt collector under the FDCPA.

Plaintiffs also assert First American was acting as a debt collector because it sent this notice before substituting in as the trustee, and lacked the authority to record a valid notice of default. This too is unpersuasive in light of plaintiffs' failure to point to any debt collection *activity,* regardless of whether First American was authorized to send this notice, a question contested between the parties.

In short, we conclude the trial court properly sustained without leave to amend defendants' demurrer to plaintiffs' FDCPA cause of action. In light of this conclusion, we do not address plaintiffs' argument that their deed of trust incorporated the requirement that defendants comply with the FDCPA or defendants' argument that plaintiffs cannot, as private parties, seek equitable relief pursuant to the FDCPA.

In their reply brief, plaintiffs also "pray for leave to amend their complaint to allege specific violations of the Dodd Frank Act made unlawful by CFPB Bulletin 2013-07 Dated July 10, 2013. Since this case was resolved at the demurrer stage, [plaintiffs] should receive the benefit of this favorable change in the law." We previously denied their request that we take judicial notice of this bulletin because it provides guidance concerning law that did not take effect until July 21, 2011, after the occurrence of the acts that are the basis of plaintiffs' complaint. This makes their brief argument a nullity. We also disregard the issue in light of the fact that plaintiffs raise it for the first time in their reply brief without explanation. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

21

## II. *First American's Power to Conduct the Trustee Sale*

Finally, plaintiffs contend that First American did not have the power to conduct the trustee sale for several reasons. Plaintiffs' arguments do not provide a basis for reversing any aspect of the trial court's rulings.

### A. *Plaintiffs' Claims Regarding the Substitution of First American as Trustee*

Plaintiffs contend for the first time that First American did not have the power to conduct the trustee sale because its substitution as trustee was defective. They base this on three arguments: (1) the trial court erred by taking judicial notice that the substitution's signatory, identified as Chet Sconyeye, was acting as an " 'attorney in fact' " for First American; (2) the court erred by relying on the substitution when its proof of service was defective; and (3) the substitution failed to identify First American as the principal for which Sconyeye was signing, thereby not meeting statutory requirements.

Defendants, after pointing out that plaintiffs did not raise any of these claims in either their original or first amended complaints, argue each lacks merit for a variety of reasons.

We reject plaintiffs arguments because plaintiffs do not provide pertinent legal argument regarding them (*Landry v. Berryessa Union School Dist.*, *supra*, 39 Cal.App.4th at pp. 699-700), nor meet their burden of affirmatively showing error in the rulings appealed from. (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189.)

Also, we find unpersuasive plaintiffs' argument that the substitution's signature block is defective, and the substitution void, because the name of the principal for which Sconyeye was acting is not identified. Plaintiffs rely on Civil Code section 1095 for their argument but, assuming it applies (defendants contend it does not), it requires only that "[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." We agree with defendants that the signature block sufficiently indicates the signatory was acting for First American by identifying him as "its" attorney in fact. (See *Natividad v. Wells Fargo Bank, N.A.* (N.D. Cal. May 24, 2013) 2013 U.S. Dist LEXIS 74067, *50-51

[finding a similar signature block complied with section 1095's requirements].) Therefore, the signature block is not defective.

## B. *Appointment of a Foreclosure Commissioner*

Plaintiffs next argue that the property could only have been sold after the appointment of a foreclosure commissioner by the Secretary pursuant to section 3751 of title 12 of the United States Code, as incorporated into paragraphs 9 and 18 of the deed of trust. We disagree for two reasons.

Initially, plaintiffs cannot show a breach of any foreclosure commissioner requirement in the deed of trust. They assert in their reply brief, "The complaint alleges a breach of this [foreclosure commissioner] provision. No declarations or other evidence establishes whether the loan is owned by HUD, and Wells Fargo is merely the servicer. . . . [T]he allegations in the Complaint that this provision was breached must be accepted as true while ruling on the demurrer." This argument appears to refer to plaintiffs' allegation in their first amended complaint that paragraph 18 of the deed of trust incorporates a requirement that "the non-judicial trustee sale . . . be conducted . . . by a Foreclosure Commissioner. In fact no Foreclosure Commissioner was appointed, contrary to the provisions of the deed of trust and National Housing Act."

However, paragraphs 9 and 18 of the deed of trust do not contain any such requirement. Paragraph 18 only states that, "*if*" the Secretary holds a lender's interest in the deed of trust and requires immediate payment under paragraph 9, the Secretary "*may*" request a foreclosure commissioner be appointed pursuant to the Single Family Mortgage Foreclosure Act of 1994 (12 U.S.C. § 3751 et seq.) (Italics added.)[12]

---

[12] Paragraph 18 starts with a recitation of lender nonjudicial foreclosure rights that are not inconsistent with the actions alleged to have been taken by Wells Fargo and First American here. Its final provision states, "If the Lender's interest in this Security Instrument is held by the Secretary [of HUD] and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ('Act') (12 U.S.C. [§] 3751 [et seq.]) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the

23

Second, plaintiffs did not allege nor argue that the Secretary held a lender's interest in the property or invoked any authority regarding such an interest. They alleged only that Wells Fargo "sold the loan to an unidentified entity and is currently the servicer of the loan." They also confuse the issue by stating in their opening brief that it "is undisputed that Wells Fargo made the loan [and] was the foreclosing lender," and in their reply brief that Wells Fargo was the "foreclosing beneficiary." In short, their "foreclosure commissioner" argument does not provide any basis to reverse the court's rulings.

**C.** *Plaintiffs' Claim that First American Breached a Duty of Inquiry*

Next, plaintiffs contend that First American breached a duty to inquire before selling the property whether Wells Fargo had complied with the conditions precedent to foreclosure specified in paragraph 9. They cite only *Garfinkle v. Superior Court* (1978) 21 Cal.3d 268 and *Bank of America v. LaJolla Group II* (2005) 129 Cal.App.4th 706, neither of which establish such a duty. Therefore, their argument is unpersuasive.

**D.** *The Designated Trustee*

Finally, plaintiffs contend in two sentences that the "contract," meaning the deed of trust, required Fidelity National Title Company, the trustee originally designated in the deed of trust, to conduct the foreclosure sale, not First American. We reject this contention because plaintiffs again have not provided pertinent legal argument (*Landry v. Berryessa Union School Dist.*, *supra*, 39 Cal.App.4th at pp. 699-700), nor met their burden to affirmatively show error. (*Lennane v. Franchise Tax Bd.*, *supra*, 51 Cal.App.4th at p. 1189.)

---

preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law."

### III. *The Trial Court's Preliminary Injunction Ruling*

Plaintiffs also argue the trial court erred in denying them a preliminary injunction for a variety of reasons that we need not address.[13] An order denying a preliminary injunction is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).)

The trial court denied a preliminary injunction regarding plaintiffs' wrongful trustee sale claim because it concluded plaintiffs could state a cause of action for breach of contract, for which money damages would be an adequate remedy. This is incorrect for three reasons. First, as we have already discussed, *Pfeifer* and *Dimock*, as well as cases cited therein, indicate that borrowers in plaintiffs' circumstances may seek the equitable cancellation of a trustee sale as unauthorized by contract, without alleging tender. Second, plaintiffs did not allege contractual damages. Third, such damages are not typically an adequate remedy when the contract involves unique real property. (See, e.g., *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 830 [noting that "the legal remedy of damages is generally inadequate in real property disputes"]; Civ. Code, § 3387 [stating that "[i]t is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation"].) Hence, we vacate the trial court's preliminary injunction ruling and remand this matter to the trial court to determine if such an injunction is appropriate under the law as explained in this opinion. We state no opinion regarding the propriety of the trial court issuing another temporary restraining order or a preliminary injunction after remand.

---

[13] Plaintiffs also argue they were entitled to a preliminary injunction based on the Equal Credit Opportunity Act (ECOA) (15 U.S.C. § 1691). Although not asserted by defendants, we conclude plaintiffs forfeited this appellate claim by not pleading it in their complaint and first raising it in support of their application for a preliminary injunction to the trial court.

Plaintiffs also request that we grant them leave to amend their complaint to state a claim against Wells Fargo for violation of ECOA, based on *Schlegel, supra,* 720 F.3d 1204. Given our decision to reverse part of the trial court's ruling and remand this matter for further proceedings, this issue is for the trial court to determine.

## DISPOSITION

The trial court's judgment and demurrer rulings are reversed in part and affirmed in part. Specifically, we reverse the trial court's orders sustaining without leave to amend Wells Fargo's demurrers to plaintiffs' wrongful trustee sale and quiet title causes of action to the extent these causes of action seek the equitable cancellation of the trustee sale. We affirm the remainder of the trial court's orders sustaining Wells Fargo's and First American's demurrers. We vacate the trial court's denial of plaintiffs' request for a preliminary injunction.

We remand this matter to the trial court for further proceedings consistent with this opinion. The writ of supersedeas granted in this matter on September 27, 2013 shall dissolve upon the finality of this opinion as to this court. (Cal. Rules of Court, rule 8.264(b)(1).) The parties are to pay their own costs of appeal.

                                  _____

                                  Brick, J.*

We concur:


_____

Kline, P.J.


_____

Richman, J.


     * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A135577, A136359, *Fonteno, et al. v. Wells Fargo Bank, N.A., et al.*

| | |
|---|---|
| Trial Court: | Superior Court of Contra Costa County |
| Trial Judge: | Hon. Judith Craddick |
| Attorneys for Plaintiffs and Appellants | Moss & Murphy<br>Glen L. Moss |
| Attorneys for Defendant and Respondent<br>First American Trustee Servicing Solutions, LLC | Law Offices of Glenn H. Wechsler<br>Glenn H. Wechsler<br>Lawrence D. Harris |
| Attorneys for Defendant and Respondent<br>Wells Fargo Bank, N.A. | Severson & Werson<br>Jon D. Ives<br>Jan T. Chilton |

A135577, A136359, *Fonteno, et al. v. Wells Fargo Bank, N.A., et al.*