Filed 1/12/15  Tumbaga v. Bank of America CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

| | |
|---|---|
| NORALYN B. TUMBAGA et al., | C075532 |
| Plaintiffs and Appellants, | (Super. Ct. No. SC 2012-0186) |
| v. | |
| BANK OF AMERICA, N.A., et al., | |
| Defendants and Respondents. | |

In a fourth attempt to plead a viable cause of action, plaintiffs Noralyn B. Tumbaga and Wilma V. Carnay sought to set aside the August 2012 trustee's sale of their South Lake Tahoe residence to defendant Bank of America, N.A. (Bank), which defendant ReconTrust Company, N.A. (ReconTrust), conducted as a successor trustee (under a deed of trust securing a 2009 refinancing loan for the property) because plaintiffs defaulted on their financial obligation to the lender.  In essence, plaintiffs

1

contended the sale was void because neither defendant had legal capacity as lender or trustee through a valid assignment; a representative of the lender induced their default; and the process failed to comply with federal loan regulations. Plaintiffs asserted that the status of the sale as void excused them from tendering their outstanding obligation as a condition of their challenge to the sale. In a lengthy minute order, the trial court sustained this latest demurrer of defendants without leave to amend, concluding that the failure to allege a tender of the outstanding indebtedness was not excused and the elements of promissory estoppel otherwise were not established. Plaintiffs filed a premature notice of appeal 59 days later. We will deem it to be filed immediately after the subsequently entered judgment of dismissal with prejudice in favor of defendants. (Cal. Rules of Court, rule 8.308(c); *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959 (*Fuller*).)

In this court, plaintiffs yet again assert that the failure of defendants to conduct a face-to-face interview with them to discuss their default before proceeding with the trustee's sale rendered the sale *void* and thus did not require their need to tender their outstanding obligation under the loan in order to invoke the trial court's equitable power. They alternately suggest that, given the public policy reflected in legislation effective in 2013 that would eliminate (over time) the lender/trustee conduct they have alleged (see *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 903-905 (*Jolley*), citing Assem. Bill No. 278 & Sen. Bill No. 900 (2011-2012 Reg. Sess.)), enforcement of a tender requirement would be inequitable. Finally, they renew only in the most shallow sense their argument that defendants are estopped from demanding tender.[1] We shall affirm the judgment.

---

[1] Plaintiffs raise the equitable defense of "unclean hands" for the first time in their reply brief in a superficial manner. This forfeits our consideration of it. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061 & fn. 7.) They also discuss throughout their

2

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendants successfully demurred to three successive pleadings. Each time the trial court agreed the failure to allege adequately either tender of the outstanding loan obligation or an adequate excuse for failing to tender was fatal. Plaintiffs persuaded the trial court to give them one more opportunity to amend.

We assume the truth of proper factual allegations in the subject pleading, shorn of any legal conclusions. (*Fuller*, *supra*, 216 Cal.App.4th at p. 959.) There are not many.

Plaintiffs initially purchased their home in 1999. In August 2009, they refinanced the outstanding purchase loan for $265,000 (rounded) with a different lender. In October 2011, an entity known as Mortgage Electronic Registration Systems, Inc. (MERS), executed in South Carolina an assignment (notarized in California) of the 2009 deed of trust,[2] by which defendant Bank became the successor trustee. The person executing this document was unauthorized (a legal conclusion alleged without particulars). Defendant Bank never provided plaintiffs with any documentation of this assignment or any accounting of the debits and credits on the account as of the time of the assignment.

In late summer 2011, plaintiffs had contacted Abraham Thomas, a representative of defendant Bank at its South Lake Tahoe branch office, to seek a modification of the loan. Thomas informed them that a program offering loan modifications was limited to homeowners who were in default on their loans. He advised them accordingly to default on their loan in order to seek the benefit of the program, and they followed his advice. (A

---

briefing a proceeding that occurred subsequent to the entry of judgment in which the trial court expunged their lis pendens. We disregard factual references or arguments relating to this proceeding, which is entirely outside the scope of this appeal. (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 562, 577.)

[2] Neither the original deed of trust nor any other document to which the subject pleading refers is either incorporated by reference or attached as an exhibit.

hearsay allegation in the April 2012 notice of default indicates that plaintiffs apparently ceased making payments on their loan in November 2011.)

With the assistance of Thomas, plaintiffs entered into the process of applying for a loan modification with a home loans office of defendant Bank in Texas. All the written communications from the Texas office were unsigned, and employees of defendant Bank did not identify themselves during phone calls with plaintiffs. No single person was in charge of the loan negotiations. When plaintiffs expressed concern about the defaulted status of their loan, Thomas assured them that defendant Bank would not initiate foreclosure proceedings during the course of loan negotiations.

Defendant Bank designated defendant ReconTrust as its successor trustee in April 2012. The document's execution and notarization are invalid (a legal conclusion again alleged without particulars). On the same April 2012 date, defendant ReconTrust filed a notice of default and election to sell the property pursuant to the deed of trust. The amount in default was $14,000 (rounded).

Thomas assured plaintiffs that this notice of default was routine and did not have any effect, as long as negotiations were in process. The multiple anonymous contacts at the Texas office gave the same assurances.

In July 2012, defendant ReconTrust filed a notice of trustee's sale, in which it alleged that the outstanding obligation on the loan was $274,000 (rounded). The notice purportedly did not include certifications required under the Civil Code.

Plaintiffs again contacted Thomas and the Texas office. Thomas again assured them the notice of sale was not of any moment in the course of negotiations, and plaintiffs did not need to take any action in response. He thereafter was not available any longer when they attempted to contact him. The Texas office told plaintiffs that it was obtaining information to respond to their concerns. Meanwhile, defendant ReconTrust

4

ignored the efforts of plaintiffs to apprise it of the status of the loan negotiations. Four days before the date of the trustee sale, the Texas office finally sent a letter to plaintiffs stating that their loan negotiations were not sufficiently advanced to forestall the trustee sale, which would proceed as scheduled.

Although the deed of trust did not state that time was of the essence, defendant ReconTrust then transferred title to the property to defendant Bank. Pursuant to the agreement of the parties, plaintiffs remained in the residence as tenants and are current on their rent.

The loan was federally insured. Both the note and the deed of trust incorporated federal regulations for servicing the loan. The foreclosure process did not follow these regulations, because defendant Bank did not have any face-to-face interview with plaintiffs about their default before commencing it.

In connection with their demurrer, defendants requested judicial notice of the original deed of trust (which named MERS as the lender's nominee as beneficiary), defendant ReconTrust's April 2012 notice (of default and election to sell) as agent of beneficiary MERS, defendant ReconTrust's July 2012 notice of trustee's sale, and defendant ReconTrust's August 2012 trustee's deed granting title to defendant Bank. The trial court granted the request, expressly noting that it would not take judicial notice of the truth of hearsay contents in the documents. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754-760.)

The court, as noted above, sustained this fourth demurrer without leave to amend. (Given that we affirm the judgment, we do not need to reiterate its ruling on the issue of tender; we will make reference to its ruling on the barely briefed issue of promissory estoppel in the Discussion.)

5

**DISCUSSION**

We review a ruling on a demurrer de novo.  (*Fuller*, *supra*, 216 Cal.App.4th at p. 962.)  We may consider any ground raised in the demurrer, or even new theories on appeal to affirm or reverse.  (*Id*. at pp. 966-967.)  Even in the absence of a request to file an amended complaint, we must consider whether the trial court properly exercised its discretion in sustaining a demurrer without leave to amend.  (Code Civ. Proc., § 472a, subd. (c).)  It is nonetheless a plaintiff's burden on appeal to demonstrate the possibility of amending a complaint to state a cause of action; we will otherwise assume the pleading has stated its allegations as favorably as possible.  (*Fuller*, at p. 962.)[3]

There have been a plethora of foreclosure cases in recent years premised on facts similar to those that plaintiffs allege.  In one vein, there are decisions that find plaintiffs lack standing to assert irregularities in documentary transfers of rights and obligations underlying a foreclosure as a basis to challenge the authority of an initiator of foreclosure proceedings (absent allegations of specific misconduct) because California's procedure for nonjudicial foreclosure does not embrace such a cause of action, the identity of a holder in due course or the holder's agent not being of any moment to the defaulting debtor under a negotiable note.  (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82-85; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-512, 515; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154-1156 & fn. 5; *contra*, *Glaski v. Bank of America* (2013)

---

[3]  While plaintiffs assert the possibility of amendment is an *issue* on appeal, they do not present any *argument* in favor of amendment, so we will not consider it any further. (*Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 591, fn. 8, 593 (*Imagistics*).)

6

218 Cal.App.4th 1079, 1083.)**4** This is not the path down which plaintiffs have pursued their appeal, however. Rather, they take issue with a different vein of decisions focusing on the requirement that, to have standing to invoke a trial court's equitable jurisdiction to set aside a completed trustee's sale, a plaintiff must include allegations of a tender of the outstanding amount due on the underlying obligation. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).) Only if the trustee's sale is *void* is this prerequisite excused (*id*. at p. 113), or where it would be "inequitable" to impose the prerequisite (*ibid.*, citing *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291 (*Humboldt*) [widow not required to tender debt *she did not in fact owe* on separate piece of property]).

Under both federal regulations and state law, a lender cannot file the notice of default until *after* it has had a discussion *in person* with a borrower to discuss options for the avoidance of foreclosure; as a result, a borrower may *forestall* the foreclosure process *before the sale* until this meeting in person has taken place. (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1264, 1267-1268 (*Pfeifer*) [federal regulations create condition precedent of a meeting in person to discuss default *before* initiation of foreclosure proceedings on federally insured loans]; *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 217, 223, 225 (*Mabry*) [issuing writ six days before trustee sale for failure to comply with similar state law]; see *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526.) However, *Mabry* specifically held that failure to comply with the enforceable presale prerequisite to a default notice under state law does *not* raise "any cloud on title" *after* a trustee's sale, because it otherwise would run afoul of federal preemption. (*Mabry*, at pp. 214, 235; accord, *Stebley*, at p. 526 ["[a]fter the sale," state law does not provide any relief and does not excuse tender requirement].) *Pfeifer* reached the same conclusion in connection with the federal regulations, holding that a

---

**4** The Supreme Court has decided to wade into these waters. (*Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973.)

borrower may invoke them to *enjoin* foreclosure (because they were intended to prevent foreclosure), but they do not provide any right to *affirmative relief* against lenders because they do not directly regulate the relationship of the borrower and lender: They "may not be invoked by the [borrower] as a sword in an offensive cause of action against the [lender]." (*Pfeifer*, *supra*, 211 Cal.App.4th at pp. 1268-1270.)

The repeated characterization in the briefing of plaintiffs of the notice of default as being "premature" without a meeting in person to discuss their default—and therefore rendering the trustee sale "void"—utterly fails. No matter how they may seek to phrase it, they are seeking to make affirmative use of defendants' procedural default to establish a right in an independent cause of action, rather than raising the default as a defense. As a result, defendants' failure to meet with plaintiffs in person to discuss their default does not excuse the absence of any allegations of tender.

As for plaintiffs' offhand invocation of the principle that tender is not required where it would be "inequitable," the one previous case squarely applying this abstract proposition is factually inapposite, involving the rejection of a bank's claim that a widow should have offered tender to prevent foreclosure on a property in which she had a homestead interest when the debt *for which she was not liable* could have been satisfied through the sale of her late spouse's separate encumbered property. (*Humboldt*, *supra*, 161 Cal. at pp. 287-288, 290-291.) Plaintiffs do not supply *any* argument or authority for applying *Humboldt* in the context of lender/trustee conduct that was *subsequently* identified as a violation of California public policy (see *Jolley*, *supra*, 213 Cal.App.4th at pp. 903-905) in order to set aside a trustee's sale. We will not embellish their arguments further. (*Imagistics*, *supra*, 150 Cal.App.4th at pp. 591, fn. 8, 593.)

At oral argument, defendants drew this court's attention to a recent case that allowed the borrowers to bring an action to set aside a trustee's sale premised on noncompliance with the federal regulations incorporated into the deed of trust. (*Fonteno*

8

*v. Wells Fargo Bank*, *N.A.* (2014) 228 Cal.App.4th 1358 (*Fonteno*), request for depublication denied and declining to order review on its own motion, Dec. 10, 2014, S221788.)  *Fonteno* waved away the distinction discussed above between defensive and affirmative assertion of procedural noncompliance in the context of *equitable* relief, concluding in the context of post-sale litigation that "it was *essentially* defensive in nature." (*Fonteno*, at p. 1371, italics added.)  It declined to decide whether a trustee's sale was void or voidable as a result of the noncompliance (*id.* at p. 1372), applying the "inequitable" exception to the tender requirement.  Although this exception was not at issue in *Pfeifer* (which did not require tender because it was a *pre*-sale case), *Fonteno* drew from its earlier decision the principle that prevention of foreclosures was a "salient purpose" of the federal regulations.  (*Fonteno*, at p. 1373, citing *Pfeifer*, *supra*, 211 Cal.App.4th at p. 1280.)  Relying on *Pfeifer* and *Mabry* (another *pre*-sale case), *Fonteno* declared, "To require plaintiffs now to make such a tender in order to obtain cancellation of a sale allegedly conducted in disregard of [the regulations incorporated into the deed of trust as a] condition precedent[—]and [thus] without any legal authority[—]is inequitable under the circumstances." (*Fonteno*, *supra*, at p. 1374, citing *Lona*, *supra*, 202 Cal.App.4th at p. 113.)

We do not find this breathtaking leap into the dangerously malleable waters of a judicial determination of inequitability to be persuasive.  Like the plaintiffs, *Fonteno* does not explain how a *procedurally* flawed foreclosure and trustee's sale against a *defaulting* borrower is as inequitable as a foreclosure on a debt that the *Humboldt* widow did not even owe.  We also believe that *Fonteno*'s insouciant dismissal of the effects its holding would have on the stability of title (*Fonteno*, *supra*, 228 Cal.App.4th at p. 1371 [inexplicably declaring that to be a concern of the Legislature rather than part of a court's weighing of the equities]), which is the "primary reason for California's comprehensive regulation of foreclosure" (*Mabry*, *supra*, 185 Cal.App.4th at p. 235 [for which reason

9

state law cannot be construed as providing post-sale remedy]), undermines the power of its reasoning. Thus, we decline to follow *Fonteno* regardless of its allure as a response to the banking industry's poor performance in these cases.

Plaintiffs make an equally offhand assertion that they have adequately alleged *specific facts* that the conduct of defendants resulted in any promissory estoppel preventing foreclosure. (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48.) The trial court concluded the allegations did not demonstrate the breach of any promise, because defendant Bank *did* take a loan modification under consideration upon plaintiffs' default and *did not* conduct a trustee's sale until after informing them (albeit at the last minute) that it would not modify the loan. The court also found the absence of detriment because plaintiffs did not allege any facts demonstrating that defendants caused them to forego any means of satisfying their default.

As plaintiffs have not provided developed argument to the contrary, we agree on both points. Plaintiffs do not allege defendant Bank promised that they would in fact receive a modification if they defaulted; they merely allege being told (or advised) that it was a *prerequisite* to consideration for modification. Although it is arguable whether defendant Bank fulfilled its promise not to foreclose while processing the modification application (given the allegations that defendant Bank simply abandoned the modification process in favor of foreclosure), plaintiffs failed to establish that they had any means at that point to satisfy their default (such as having deposited their missed payments during the modification process in an account with accrued interest), which defendant Bank may have induced them to forego after the April 2012 notice to their detriment.

10

## DISPOSITION

The judgment of dismissal is affirmed.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                   _____BUTZ_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____DUARTE_____, J.

11