[No. G043371. Fourth Dist., Div. Three. May 20, 2011.]

THE PEOPLE, Plaintiff and Appellant, v.
BRIAN DAVID HESLINGTON, Defendant and Respondent.

948

## Counsel

Tony Rackauckas, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Plaintiff and Appellant.

Stephen S. Buckley and Christian C. Buckley, under appointments by the Court of Appeal, for Defendant and Respondent.

## Opinion

**IKOLA, J.**—The People charged defendant Brian David Heslington with possession of controlled substances and a weapon found during a search of his home pursuant to a warrant. Prior to trial defendant moved to quash and traverse the search warrant and suppress the evidence. Because the affidavit that supported the search warrant was partially sealed, the court, in considering defendant's suppression motions, tried to comply with *People v. Hobbs* (1994) 7 Cal.4th 948 [30 Cal.Rptr.2d 651, 873 P.2d 1246] (*Hobbs*). But the court misapplied the *Hobbs* procedure and granted defendant's suppression motions. As a result, the People were unable to proceed with their action and the court dismissed it. Because the court misapplied *Hobbs*, we reverse the order dismissing the People's action against defendant.

### FACTS

*The Search Warrant and Affidavit*

On August 4, 2008, Judge Frances Munoz issued a search warrant for defendant's home and six other residences (as well as related vehicles). The persons and property to be searched or seized included defendant and Scott Michael Guinn, blood or saliva DNA samples, clothing (including any bloodstained clothes), gang indicia, computers, and cell phones.

Officer Kristen O'Donnell signed the supporting affidavit, swearing under oath that the facts in the incorporated statement of probable cause were true. O'Donnell believed probable cause for a search warrant existed because the

property to be searched and seized would tend to establish the felony offenses of attempted murder, street terrorism, and, as to John Lloyd (who allegedly struck someone with a billiard ball), assault with a deadly weapon.

Attached police reports stated that at 1:45 p.m. on July 27, 2008, four officers were dispatched to Blackie's By The Sea (Blackie's) after an anonymous caller reported a fight in the bar involving about 30 "biker guys." An officer observed about 18 males wearing leather "Set Free Soldiers" jackets running through the Blackie's parking lot and hiding behind vehicles.[1] He and another officer detained seven of these men. Recognizing one man as the head of the Soldiers gang, an officer asked for his name; the man replied, "Chief." The officers completed field investigation cards on the detainees, then released them after being unable to establish that a crime had occurred. (Attached to the affidavit were 14 field investigation cards dated July 27, 2008.) The owner of the bar stated he would provide the police with a video of the fight.

Three officers stopped a black Mercedes with no license plates fleeing the area. The car's three occupants wore Set Free Soldiers shirts and had folding knives. Two more knives were found in the trunk. One of the knives in the trunk had "wet blood streaks along the four inch blade," as well as a strand of hair and a red thread stuck to it. The car's occupants denied any knowledge of the bloodstained knife.

The driver of the Mercedes confirmed he had been involved in the fight at Blackie's. He said Set Free Soldiers is a church group which seeks "to rehabilitate and save parolees and other outlaw biker types who want to find Christ." He and about 10 of his brothers were at Blackie's with their head pastor, when around 10 to 15 "feather heads" (Hell's Angels) dressed in red T-shirts entered the bar in "formation with their chapter leader at the front of the group."[2] The Hell's Angels group was "very organized in their demeanor" and had only one member who spoke for them. The Angels spokesman told the head pastor of the Soldiers that the Soldiers were claiming to be associated with the Angels, but were not associates and should stop taking business away from the Angels. A fight ensued, during which an Angel hit a Soldier in the back of the head with a pool cue.

The Mercedes driver explained that since blood had been drawn by both groups, Hell's Angels would now consider Set Free Soldiers to be a rival gang and "green lighted," a status requiring any Angel to kill any Soldier seen "flying their colors," i.e., wearing a group jacket.

---

[1] Set Free Soldiers members are sometimes referred to in this opinion as "the Soldiers."

[2] Hell's Angels members are sometimes referred to in this opinion as the Angels or "Hell's Angels."

An officer at the scene of the crime observed a possible victim with a large laceration on the back of his head. The victim was uncooperative and refused to give any information about how he was injured. The officer photographed the victim's injuries. A police investigator found a pool of blood on the floor in the rear of the bar.

The incorporated statement of probable cause, prepared by O'Donnell, accurately summarized the foregoing police reports. It also summarized the surveillance video of the Blackie's incident. O'Donnell had reviewed the surveillance video with the help of two gang/homicide experts (Detective R. LaRochelle and Sheriff Deputy Corporal Dan Ponder).

The surveillance video showed three Soldiers, including chief pastor Phil Aguilar, entering the bar at 1:32 p.m. Two more Soldiers entered after them. Aguilar used his cell phone. Ten minutes later, two Hell's Angels entered the bar—John Lloyd, the treasurer of the Orange County chapter, and David Dabbs, the vice-president of the San Diego chapter. Three more Angels (including defendant and Scott Guinn) followed them. Eight more Soldiers came in. Lloyd approached Aguilar, the Soldiers's leader. Aguilar extended his hand, but Lloyd refused to shake it. The two appeared to have a heated argument. An altercation ensued. At least 16 Soldiers were present during the altercation. A Soldier appeared to punch or stab Dabbs. Aguilar and his son restrained Dabbs against a wall. Two Soldiers punched an Angel. A Soldier, Jose Enrique Quinones, took out a knife, approached defendant from behind, made a slicing motion across defendant's throat, and then made a stabbing movement to defendant's torso. Quinones then appeared to stab Dabbs. Hell's Angel Lloyd wrestled with a Soldier. Lloyd pushed him onto a pool table and struck him on the back of the head with a cue ball, then pushed him onto the floor, where the two men punched each other. A Soldier punched Guinn.

The statement of probable cause included descriptions of the gang affiliations of the persons covered by the warrant. Ponder, an expert on the Hell's Angels gang, identified defendant as an "associate" of Hell's Angels.

O'Donnell believed, based on LaRochelle's knowledge and experience, that (1) "there was communication between the Hells Angels and Set Free Soldiers during which they planned the meeting time, date, and location"; and (2) "the incident on [July 27, 2008,] was pre-planned and an ambush set up by Phil Aguilar and Set Free Soldiers against the Hells Angels."

Judge Munoz ordered that pages 21 through 39 of the affidavit be sealed to protect the identity of informants and the confidentiality of official information privileged under Evidence Code sections 1040, 1041, and 1042.[3] (The foregoing factual recitation summarizes information in the originally *unsealed* portion of the affidavit.) Judge Munoz ordered the Newport Beach Police Department to maintain custody of the sealed affidavit.

*The Search of Defendant's Home and the Charges Against Him*[4]

Around 5:45 a.m. on August 6, 2008, police searched defendant's home pursuant to the warrant. Defendant acknowledged that "everything located inside the residence" belonged to him. Usable amounts of cocaine and ecstasy were found in defendant's bedroom (the master bedroom). Beneath his bed was a loaded pistol. Inside a safe in the garage was "a plethora of various firearms." The occupant of the home's other bedroom was Scott Guinn.

In a February 9, 2009 information, the People charged defendant with possession of cocaine (Health & Saf. Code, § 11350, subd. (a)), possession of ecstasy (Health & Saf. Code, § 11377, subd. (a)), and possession of cocaine while armed with a semiautomatic pistol (Health & Saf. Code, §11370.1, subd. (a)). The information also charged defendant with street terrorism, but the court dismissed that count at the People's request.

*Defendant's Suppression Motions*

Defendant filed a motion to quash the search warrant in May 2009 and then a slightly amended motion in June 2009. Judge Richard M. King found that the *unsealed* part of the affidavit contained probable cause for the warrant and denied defendant's motion.

In July 2009, defendant filed a motion to traverse the search warrant. He asked Judge King to unseal the sealed affidavit and follow the procedures set forth in *Hobbs, supra,* 7 Cal.4th 948, which applies when a defendant lacks access to confidential information supporting a challenged search warrant. The People opposed defendant's motion on the ground he was precluded under Penal Code section 1538.5 from filing a second suppression motion after the court denied his first one.[5] (§ 1538.5, subds. (i) & (m).)

Judge King confirmed he had not reviewed the sealed affidavit and agreed to review it. He ordered the People to file the original sealed affidavit with the court.

---

[3] References to the "sealed affidavit" in this opinion refer to the part of the affidavit sealed by Judge Munoz, i.e., pages 21 through 39.

[4] Some facts are taken from the preliminary hearing.

[5] All statutory references are to the Penal Code unless otherwise stated.

But confusion ensued as to the sealed affidavit's location. O'Donnell testified she filed the original document with the court, not knowing Judge Munoz had ordered the police department to keep custody of it. O'Donnell brought to court and gave the prosecutor (1) a *copy* of the sealed affidavit, and (2) a *"certified copy"* of Judge Munoz's sealing order, which included a color copy of the court clerk's certification. The *prosecutor* submitted the pages as a certified copy of the sealed affidavit. The original sealed affidavit was eventually located in a property locker at the police department by O'Donnell's partner. The partner testified he was with O'Donnell when she filed the return of the executed warrant, as well as an "envelope of documents," with the court clerk. The partner further testified that the police department had changed its policy concerning who maintains custody of sealed affidavits; previously such documents were kept in a safe at the police department, but the policy was changed to require that such documents be filed with the court clerk.

In November 2009, defendant moved to quash the search warrant and suppress the evidence. At defendant's request, Judge King reviewed the surveillance video. The People introduced still photographs of several frames from the surveillance video showing a Soldier wielding a knife.

*The Court's Ruling*

Judge King first ordered substantial, significant parts of the sealed affidavit to be unsealed and disclosed to the defense pursuant to *Hobbs*. The People complied.

Subsequently, in a lengthy ruling, Judge King applied the *Hobbs* standard and found a reasonable "probability" that defendant would prevail on his motion to quash the warrant and a reasonable "possibility" he would prevail on his motion to traverse it. Judge King therefore ordered the People to disclose the entire sealed affidavit to the defense. "The People refuse[d] to consent to such disclosure." Judge King then granted defendant's suppression motions, but clarified he was *not* granting the motions on the merits, but rather pursuant to *Hobbs*.

## DISCUSSION

*The Dismissal Order Is Appealable*

On the same day Judge King granted defendant's suppression motions, Judge Thomas M. Goethals dismissed the case (impliedly on his own motion) after the People (1) announced they were unable to proceed at this time due

to Judge King's "adverse ruling" on a section 1538.5 suppression motion, and (2) clarified they were *not* asking for a dismissal."

Defendant contends the dismissal order is *not* appealable and the People's only recourse here was to petition for a writ pursuant to section 1538.5, subdivision (*o*). Under that subdivision, "[w]ithin 30 days after a defendant's [suppression] motion is granted at a special hearing in a felony case, the people may [petition for a writ] in the court of appeal, seeking appellate review of the ruling regarding the search or seizure motion." (*Ibid.*)

The district attorney argues the dismissal order is appealable under section 1238, subdivision (a)(7), which allows the People to appeal from a pretrial dismissal order made on the court's motion under section 1385, "based upon an order granting the defendant's" suppression motion under the Penal Code.

Defendant invites our attention to cases that actually *support* the district attorney's position that the dismissal order is appealable under section 1238, subdivision (a)(7). In *People v. Laiwa* (1983) 34 Cal.3d 711 [195 Cal.Rptr. 503, 669 P.2d 1278], our Supreme Court stated, "In felony cases, the People can petition for writ if the prosecution has not been dismissed on motion of the superior court pursuant to section 1385 [citation], and can appeal if it has [citation]." (*Laiwa*, at p. 717, fn. omitted.) The appellate court in *People v. Bonds* (1999) 70 Cal.App.4th 732 [83 Cal.Rptr.2d 10] explained that the People should petition for a writ " 'when some evidence is suppressed but enough evidence remains on which to try the case.' " (*Id.* at p. 738.) Under those circumstances, writ review is appropriate "because it permits a speedy inspection of the trial court's ruling." (*Ibid.*) "On the other hand, '[i]f the superior court grants a motion to suppress evidence, and the prosecution announces that it is unable to proceed without the suppressed evidence, the court on its own motion should dismiss the action under [section] 1385.' " (*Ibid.*) The People "may then bring an appeal . . . ." (*Bonds*, at p. 739.)

Nonetheless, defendant argues section 1238, subdivision (a)(7) does not permit an appeal here because Judge King granted defendant's suppression motions based on the People's refusal to divulge the sealed affidavit, rather than on the merits of the motions. But section 1238, subdivision (a)(7) requires only that the dismissal order be "based upon an order granting the defendant's motion to return or suppress property or evidence made at a special hearing as provided in this code." The dismissal order here meets this requirement.

*The* Hobbs *Procedure*

By statutory privilege, public entities may refuse to disclose official information and an informant's identity when disclosure is against the public

interest. (Evid. Code, §§ 1040, 1041.) And, when a search warrant is valid on its face, a public entity bringing a criminal proceeding may establish the search's legality without revealing to the defendant any official information or an informant's identity. (Evid. Code, § 1042, subd. (b).)

In *Hobbs*, our Supreme Court "conclude[d] that, taken together, the informant's privilege ([Evid. Code,] § 1041), the long-standing rule extending coverage of that privilege to information furnished by the informant which, if disclosed, might reveal his or her identity, and the codified rule that disclosure of an informant's identity is not required to establish the legality of a search pursuant to a warrant valid on its face ([Evid. Code,] § 1042, subd. (b)) compel a conclusion that all or any part of a search warrant affidavit may be sealed if necessary to implement the privilege and protect the identity of a confidential informant." (*Hobbs, supra*, 7 Cal.4th at p. 971.) But, in order to preserve a defendant's right to "reasonable access to information that might form the basis for challenging the validity of a search warrant," a trial court must follow certain procedures when a search warrant affidavit has been fully or partially sealed. (*Id.* at pp. 962, 971–972.) These procedures "strike a fair balance between the People's right to assert the informant's privilege and the defendant's discovery rights." (*Id.* at p. 972.)

■  The court implements these procedures at an in camera hearing from which *the defendant and defense counsel* are generally excluded. (*Hobbs, supra*, 7 Cal.4th at p. 972.) Therefore, the court must take it upon itself to protect the defendant's rights (*id.* at p. 970) and "to examine the affidavit for possible inconsistencies or insufficiencies regarding the showing of probable cause" (*id.* at p. 973). A trial court is capable of reviewing "all the relevant materials in camera to determine whether they will support defendant's challenges to the search warrant." (*Id.* at p. 971.)[6]

---

[6] Defendant contends we may not properly review the sealed materials in this case because he does not have access to them and "has no ability to contest the contents of the documents, [the People's] characterizations of them, or this Court's conclusions if the materials are reviewed." A similar argument was rejected in *Hobbs, supra*, 7 Cal.4th at page 970, where our Supreme Court stated that trial judges are capable of enforcing a defendant's Fourth Amendment rights without the assistance of the defendant or defense counsel.

An appellate court is equally capable of reviewing confidential documents with an eye toward protecting a defendant's interests and rights. Moreover, our review of the sealed affidavit in this case is necessary to "meaningful appellate review of the warrant." (*People v. Galland* (2008) 45 Cal.4th 354, 370 [86 Cal.Rptr.3d 841, 197 P.3d 736] [sufficient record required for meaningful appellate review of warrant]; see also *Hobbs, supra*, 7 Cal.4th at p. 975 ["In all instances, a sealed transcript of the in camera proceedings, and any other sealed or excised materials, should be retained in the record along with the public portions of the search warrant application for possible appellate review."].)

Defendant relies by analogy on California Rules of Court, rule 8.328, subdivision (b)(4) through (6), which provide that where a defendant's opening brief on appeal raises an issue under *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], the People are

At the in camera hearing, the court's first step is to determine whether the affidavit or any major portion of it has been properly sealed. (*Hobbs, supra*, 7 Cal.4th at p. 972.) This question entails two determinations: "It must first be determined whether sufficient grounds exist for maintaining the confidentiality of the informant's identity. It should then be determined whether the entirety of the affidavit or any major portion thereof is properly sealed, i.e., whether the extent of the sealing is necessary to avoid revealing the informant's identity." (*Ibid.*) If the court "finds that any portion of the affidavit sealed by the magistrate can be further redacted, and the remaining excerpted portion made public without thereby divulging the informant's identity, such additional limited disclosure should be ordered." (*Id.* at p. 972, fn. 7.)

If the court finds that the affidavit or a major part of it has been properly sealed, the court proceeds to step two of the *Hobbs* procedure. (*Hobbs, supra*, 7 Cal.4th at pp. 974–975.) This second step requires the court to determine whether "there is a reasonable probability the defendant would prevail" on his suppression motion. (*Hobbs, supra*, 7 Cal.4th at p. 975.) The "precise standard of review" applied by the court at step two of the *Hobbs* procedure depends on whether the defendant has noticed a motion to *quash* the warrant or to *traverse* it.[7] (*Hobbs*, at p. 973.) As to both types of motions, however, if the court finds (under the applicable standard of review) that there is a *reasonable probability* the defendant will prevail on the motion, the court must give the district attorney a choice. (*Id.* at pp. 974–975.) The People may either (1) consent to full disclosure of the sealed materials, in which case the

---

entitled to a copy of relevant portions of confidential materials. But subdivision (c) of that rule, entitled "Other in-camera proceedings and confidential records," contemplates appellate review of confidential documents to which a party is denied access.

In sum, this court may properly review the sealed affidavit and transcripts. We have reviewed them in their entirety.

[7] A defendant moving to *quash* a warrant asserts the warrant on its face lacks probable cause. (*Hobbs, supra*, 7 Cal.4th at pp. 965, 974.) " '[T]he warrant can be upset only if the affidavit fails *as a matter of law* [under the applicable standard announced in *Illinois* v. *Gates* [(1983)] 462 U.S. [213,] 238 [76 L.Ed.2d 527, 103 S.Ct.2317]] to set forth *sufficient competent evidence* supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony.' " (*Id.* at p. 975, italics added.) Because of the strong policy supporting search warrants, deference should be paid to the magistrate's determination of probable cause (*United States v. Leon* (1984) 468 U.S. 897, 913–914 [82 L.Ed.2d 677, 104 S.Ct. 3405]), especially in close cases (*People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1716 [54 Cal.Rptr.2d 708]).

A defendant moving to *traverse* a warrant "mount[s] a subfacial challenge, i.e., attack[s] the underlying veracity of statements made on the face of the search warrant application." (*Hobbs, supra*, 7 Cal.4th at pp. 965, 974.) Generally, to prevail on a motion to traverse, the defendant must show: (1) the affidavit contained "a false statement made 'knowingly and intentionally, or with reckless disregard for the truth;' and (2) 'the allegedly false statement is necessary to the finding of probable cause.' " (*Id.* at p. 974.)

motion proceeds "to decision with the benefit of this additional evidence, and a further evidentiary hearing if necessary," or (2) refuse to disclose the confidential information, in which case the court *must* grant the defendant's motion. (*Ibid.*) Thus, serious consequences ensue from a court's finding that it is reasonably probable the defendant will prevail on a suppression motion. Either the defendant's motion is granted and the evidence is suppressed, *or* secret information is made public, possibly jeopardizing a confidential informant's safety and continued usefulness, or exposing an ongoing undercover investigation.

■ A less drastic outcome may result when a court, in deciding the step one question of whether an affidavit has been properly sealed, determines that some, but not all, of the sealed material may be disclosed. *Hobbs* states that an affidavit is properly sealed only if "the extent of the sealing is justified" (*Hobbs, supra,* 7 Cal.4th at p. 973), and further instructs that if a sealed affidavit "can be further redacted, and the remaining excerpted portion made public . . . , such additional *limited* disclosure should be ordered" (*id.* at p. 972, fn. 7, italics added). But *Hobbs* does not address the circumstance where—as here—the court orders a *significant* part of the sealed affidavit to be divulged. If the additional disclosure sufficiently satisfies a defendant's " 'limited but viable' " discovery rights, while maintaining the secrecy of privileged material critical to "the state's 'strong and legitimate' interest in protecting the confidentiality of its informants" (*id.* at p. 967), the court has effected a fair balance without resorting to step two of the *Hobbs* procedure.

Thus, implicit in *Hobbs* is the requirement that a court, upon ordering further redaction of sealed materials, determine whether the remaining confidential material contains information which is significant to the defendant's ability to challenge the search warrant *and* which is not disclosed elsewhere.[8] This assessment does not depend on the percentage of the sealed affidavit ordered to be divulged, but rather on the import and impact of the sections that remain sealed. The court should consider whether the defendant remains "ignorant of . . . critical portions of the affidavit," or, stated another way, whether his or her "access to the essence of the affidavit is curtailed," such that his or her right to raise a pretrial challenge to the warrant's validity is impaired. (*Hobbs, supra,* 7 Cal.4th at p. 973.) By doing so, the court determines whether the remainder of *Hobbs*'s in camera procedure (and its potentially severe consequences to the People) is still necessary.

■ When the critical parts of the sealed affidavit have been disclosed to the defense, there is no need for further unsealing of confidential material or

---

[8] *Hobbs* does not address the scenario in which the court finds the affidavit is properly sealed but the confidential material would not assist the defendant to support the suppression motion. In such a case, our analysis here suggests the court should not proceed to step two of the *Hobbs* procedure but should instead conduct the suppression hearing in the usual way.

for the court to act on the defendant's behalf. At that point, a court should *not* proceed to the second stage of the *Hobbs* procedure. Instead, the suppression motion should proceed to decision with a further evidentiary hearing if necessary.

To recap, the first stage of the *Hobbs* procedure requires the court to determine (1) whether any or all of the warrant is properly sealed, i.e., whether any further disclosures must be made to the defendant, and (2) whether any of the remaining confidential information is significant to defendant's cause. Only if the answer to this second question is yes does the court proceed to the next stage of *Hobbs* and decide whether there is a reasonable probability the defendant will prevail on the suppression motion.

*The Redacted Affidavit and the Court's Application of* Hobbs's *Reasonable Probability Analysis to Defendant's Suppression Motions*

Here, the court *tentatively* unsealed large parts of the initially sealed affidavit so that the great bulk of it would be made public, but gave the People an opportunity to show that further sealing was necessary. At an in camera hearing, the People presented testimony on the need for further confidentiality. The court then ordered substantially more sealing of the tentatively redacted affidavit. The court ordered the People to give defendant a copy of the *final* redacted affidavit. Accordingly, the People gave the defense a copy. The court stated it would afford defendant a chance to argue his motion to quash the warrant with the benefit of the further disclosures. The record does not reflect the defense did so.

The court then stated it had finished *Hobbs*'s first step of reviewing the affidavit and disclosing "items not necessary to protect the privileged information." The court announced it would proceed to the next step under *Hobbs*.

This decision was erroneous because the disclosures ordered by the court were so substantial that the affidavit's remaining sealed material was insignificant to defendant's cause. These disclosures included the following information: LaRochelle believed that (1) Aguilar and the other Soldiers at Blackie's conspired to further the gang's reputation as an outlaw motorcycle gang by fighting and stabbing members of Hell's Angels; (2) the Soldiers preplanned an attack on the Angels in order to raise the status of Set Free Soldiers from a Christian motorcycle club to an outlaw motorcycle gang by attacking Hell's Angels, which is the motorcycle gang at the top of the pyramid; and (3) the Soldiers completed the transformation into an outlaw motorcycle gang by challenging, fighting, and causing bodily injuries to Hell's Angels. O'Donnell believed, based on LaRochelle's expertise, that the Orange County chapter members of Hell's Angels were present at Blackie's

to deliver a message to Aguilar and the Soldiers that the Soldiers were no longer allowed to conduct business in the Angels's operating areas such as Newport Beach. Four days before the incident at Blackie's, Aguilar posted information online which showed Set Free Soldiers's allegiance to the Vagos (a rival gang to Hell's Angels).

We have compared the final redacted affidavit (of which defendant has a copy) with the sealed affidavit. Our review reveals that the remaining confidential material contains no new information helpful to defendant's cause.

As to his motion to quash the warrant, the court found it was reasonably probable defendant would prevail because "there is a reasonable possibility that there are *insufficient* facts in the sealed portion of the affidavit to support a finding of a preplanned gang assault on the part of the Hell's Angels." (Italics added.) But evidence that Hell's Angels did *not* preplan the assault had already been disclosed to defendant. The final redacted affidavit disclosed that *Set Free Soldiers* planned to attack and stab Hell's Angels in order to raise the Soldiers's status by attacking the top gang. Even the unsealed affidavit disclosed that the Soldiers preplanned and set up an ambush against the Angels.

As to defendant's motion to traverse the warrant, the court found a reasonable "possibility" that defendant would prevail, based on its finding O'Donnell lacked credibility: "In summary, detective O'Donnell's false or reckless testimony as to the filing of the original sealed affidavit at Harbor Court and her participation in . . . duplicating a court certification leads the Court to conclude that there is a reasonable possibility that either a false statement material to probable cause or one made with reckless disregard for the truth was presented to the magistrate who issued the search warrant." But nothing in the remaining confidential material is germane to the issue of O'Donnell's credibility. Defendant is aware of O'Donnell's testimony and actions concerning the location of the original sealed affidavit.

In sum, after the court ordered the People to divulge the final redacted affidavit to defendant, no further need existed for the court to continue with the *Hobbs* procedure. Instead, the court should have allowed defendant to amend or renew his suppression motions in light of the further disclosures. The court should then have conducted an evidentiary hearing, if necessary.

Because the court erred by applying the *Hobbs* reasonable probability analysis to defendant's suppression motions, we reverse the order dismissing the action. (*People v. Foster* (1969) 274 Cal.App.2d 778, 783 [79 Cal.Rptr. 397] [where prosecution appeals § 1385 dismissal order based on § 1538.5

order suppressing evidence, "the appellate court may consider, and reverse for, error attending the earlier suppression order"]; see also *People v. Perillo* (1969) 275 Cal.App.2d 778, 781 [80 Cal.Rptr. 160].)

## DISPOSITION

The dismissal order is reversed with directions that the trial court conduct a hearing to determine the merits of defendant's suppression motions with the benefit of the additionally disclosed evidence and such other evidence as may be presented at the hearing.

Bedsworth, Acting P. J., and Moore, J., concurred.

A petition for a rehearing was denied June 9, 2011, and respondent's petition for review by the Supreme Court was denied August 24, 2011, S194136.