Filed 10/1/15  P. v. Robinson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B256799 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA058830) |
| v. | |
| JOHN L. ROBINSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard E. Naranjo, Judge.  Affirmed.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, and Davis A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

John L. Robinson (defendant) appeals his convictions and resulting 18 year state prison sentence for possession of cocaine for sale, possession of an assault weapon, and being a felon in possession of firearms. He contends that the trial court erred in (1) overruling his objections that the prosecutor had used peremptory challenges to excuse three prospective jurors based on their race, and (2) denying his motion for a new trial. Defendant also asks us to examine whether the trial court erred in denying his motion to unseal the partially sealed search warrant affidavit in this case. None of these arguments has merit, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The charges in this case stem from the execution of a search warrant at a residence in Lancaster. The odor of powder cocaine pervaded the residence. One of the residence's front bedrooms had been set up as an office. Inside this office, Los Angeles County Sheriff's deputies recovered an AK-47 style assault rifle loaded with 18 live rounds; a glass table bearing a plate with a white residue, a razor blade and knife, eight or nine boxes of baking soda, sandwich bags, digital scales, and a container of institol (which is used to "cut" or dilute cocaine); and a safe containing $10,717 in cash and two brick-shaped packages of cocaine, one of which had been opened, with a street value ranging from $50,000 to $200,000 or $300,000 depending on how much it was "cut." These items are commonly associated with the large-scale manufacture and sale of cocaine base. Two other loaded guns—a nine-millimeter Smith & Wesson pistol with eight live rounds and a "38 Special" revolver with four live rounds—were stuffed under the sofa cushions in the television room.

When the Sheriff's deputies executed the warrant, only defendant's 55-year-old mother and an infant were inside the residence. However, there was evidence tying defendant to the residence: The office containing the cocaine, assault rifle, and cash also contained defendant's ATM card, his library card, and mail addressed to him; and his California identification card was found next to a live nine-millimeter round on a shelf in the master bedroom closet.

2

While the search being conducted, defendant was pulled over near the residence and arrested. Sheriff's deputies found $962 in cash and defendant's driver's license in the car's center console. In a subsequent, recorded interview, defendant stated that the residence belong to him and that his mother was not involved in any criminal activity.

The People charged defendant with (1) possession for sale of a controlled substance (cocaine) (Health & Saf. Code, § 11351; count 1), (2) possession of a controlled substance while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a); count 2), (3) possession of an assault weapon (Pen. Code, § 30605, subd. (a); count 3),[1] and (4) three counts of being a felon-in-possession of a firearm (§ 29800, subd. (a); counts 4, 5, and 6.) The People also alleged that defendant was armed with an assault rifle while possessing cocaine for sale (§ 12022, subd. (c)), had suffered two prior convictions for possession of a controlled substance (Health & Saf. Code, § 11370.2, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).

The jury returned guilty verdicts on all counts and found true the accompanying firearm-use allegation. In bifurcated proceedings, defendant admitted his prior convictions and prison term. After denying defendant's motion for a new trial, the trial court imposed a prison sentence of 18 years. The court selected the possession of cocaine count as the principal count, and imposed the upper term of four years, and then added five years for the firearm-use enhancement, six years for the two prior drug convictions (three for each), and one year for the prior prison term. The court imposed consecutive terms of eight months each on the possession of an assault weapon count and on two of the three felon-in-possession counts, but stayed the sentence on the remaining counts under section 654.

Defendant timely appealed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

**DISCUSSION**

## I.      Jury Selection–*Batson/Wheeler* Motions

Although a prosecutor may exercise a peremptory challenge to strike a prospective juror "'for any reason, or no reason at all'" (*People v. Scott* (2015) 61 Cal.4th 363, 387 (*Scott*), quoting *Hernandez v. New York* (1991) 500 U.S. 352, 374 (conc. opn. of O'Connor, J.)), he or she may *not* use a peremptory challenge to "'strike prospective jurors on the basis of group bias—that is, bias against "members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds" . . .'" (*People v. Bell* (2007) 40 Cal.4th 582, 596 (*Bell*)).  Doing so violates the defendant's federal right to equal protection set forth in *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and his state right to a trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution (*People v. Wheeler* (1978) 22 Cal.3d 258, 272 (*Wheeler*).)

A defendant bears the ultimate burden of showing a constitutional violation (*People v. Lenix* (2008) 44 Cal.4th 602, 612-613 (*Lenix*)), but courts employ a three-step, burden-shifting mechanism in assessing whether a violation has occurred.  The defendant first must "make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges."  (*Scott*, *supra*, 61 Cal.4th at p. 383.)  If the trial court finds that the defendant has established this prima facie case, the prosecutor must then "explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications." (*Ibid.*)  Lastly, the court must make a "'sincere and reasoned effort to evaluate the nondiscriminatory justifications'" (*People v. Williams* (2013) 56 Cal.4th 630, 650 (*Williams*)) and "decide whether" the prosecutor's proffered reasons are subjectively genuine or instead a pretext for discrimination.  (*Scott*, at p. 383; *People v. Duff* (2014) 58 Cal.4th 527, 548; *People v. Jones* (2013) 57 Cal.4th 899, 917 (*Jones*)).

4

Defendant argues that the trial court erred in rejecting his *Batson*/*Wheeler* challenges to the prosecutor's exercise of peremptory strikes against three jurors. We consider each separately.

### A. *Prospective Juror 6946*

In response to questioning by the trial court, Prospective Juror 6946 indicated that she was a receptionist at a medical office; her father was a machine operator and her mother was a stay-at-home mom; she had a brother in college and a sister in elementary school; she lived in the Antelope Valley; and she had no prior jury duty experience. The prosecutor exercised two peremptory challenges on other jurors without defense objection. When the prosecutor exercised his third challenge against Prospective Juror 6946, defendant made a *Batson*/*Wheeler* objection. At a sidebar, defense counsel offered two reasons in support of a prima facie case of discrimination: (1) the juror "appear[ed] to [him] to be" the same race as defendant—namely, African-American; and (2) the juror's answers did not indicate she would be an unfair juror. The trial court expressed doubt that Prospective Juror 6946 was African-American (and indicated she might be Asian-American), but ultimately ruled that defendant had not established a prima facie case because a prosecutor's first dismissal could not establish a prima facie case.

Because "a *Wheeler/Batson* violation may occur with a single discriminatory challenge" (*People v. Williams* (2006) 40 Cal.4th 287, 313 (*Williams*)), the trial court erred in relying on a categorical rule that a solitary challenge cannot. However, our task is to review the court's *ruling*, not merely its *reasoning*. (*Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1365.) We must therefore assess for ourselves whether defendant made out a prima facie case, and do so de novo. (*Scott*, *supra*, 61 Cal.4th at p. 384 [de novo review applies where trial court applied the incorrect standard].)

Although "the existence of a prima facie case depends on consideration of the entire record of voir dire at the time the [*Batson/Wheeler* challenge] was made," courts have enumerated several factors to examine: (1) whether the prosecutor has struck most

5

or all members of the identifiable group to which the prospective juror belongs; (2) whether the prosecutor has used a disproportionate number of his peremptory strikes against that group; (3) whether the prosecutor has "failed to engage these jurors in more than desultory voir dire"; (4) whether the defendant belongs to the same identifiable group as the juror; (5) whether the crime victim belongs the same identifiable group as a majority of the remaining jurors; and (6) whether other "nondiscriminatory reasons for a peremptory challenge . . . are apparent from and 'clearly established' in the record." (*Scott*, *supra*, 61 Cal.4th at p. 384; *Bell*, *supra*, 40 Cal.4th at p. 597; *People v. Taylor* (2010) 48 Cal.4th 574, 616.)  In light of these factors, courts have noted that a prima facie case is "rarely" made out on the basis of a "challenge of one or two jurors."  (*Bell*, at p. 598; *Williams*, *supra*, 40 Cal.4th at p. 313 ["a court should be hesitant to infer a *Wheeler/Batson* violation when comparative analysis raises questions as to a single prospective juror"].)

On the record before us, defendant did not establish a prima facie case of discrimination at the time the prosecutor exercised a peremptory challenge against Prospective Juror 6946.  Although the trial court's questioning of this juror was cursory and the prosecutor did not ask any followup questions, most of the remaining factors counsel against an inference of discrimination:  At the time of his challenge, the prosecutor had exercised two peremptory challenges but *none* of them had been used to excuse an African-American or Asian-American juror; both the court and prosecutor questioned whether Prospective Juror 6946 was of the same race as defendant; and there was no crime victim.  It is debatable whether a nondiscriminatory reason to excuse Prospective Juror 6946 is apparent from the record.  But taken as a whole, the totality of these factors does not give rise to an inference of discriminatory purpose.  (*Johnson v. California* (2005) 545 U.S. 162, 168.)

### B. *Prospective Juror 1250*

Prospective Juror 1250 stated she was married with two children and was employed as an "eligibility worker."  She also said that her son was a defendant in an

6

assault case; that he was unhappy with the result of that case; and that she believed her son had been treated unfairly. The prosecutor exercised his fourth peremptory challenge against this juror. Defendant made a *Batson/Wheeler* objection, arguing that she was the second African-American juror to be stricken. The trial court found that defendant had made out a prima facie case, and asked the prosecutor to state his reasons for the strike. The prosecutor gave two reasons: (1) Prospective Juror 1250 was an "eligibility worker," which is similar to a social worker, which is a profession whose members are more likely to be forgiving and to give accused criminals the benefit of the doubt; and (2) Prospective Juror 1250 had concerns about how her son's criminal case had been handled. The court found these reasons to be race-neutral and overruled the objection.

In assessing a trial court's ruling on the final step of the *Batson/Wheeler* analysis, our standard of review is less rigorous: "As long as the court 'ma[de] a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered," we give "great deference to the trial court's ability to distinguish bona fide reasons from sham excuses." (*Williams*, *supra*, 56 Cal.4th at p. 650.) Both reasons the prosecutor offered as to this juror are, under settled case law, nondiscriminatory. (See *People v. Clark* (2011) 52 Cal.4th 856, 908 [juror's experience in counseling or social services; race-neutral basis for excusal]; *Jones*, *supra*, 57 Cal.4th at p. 920 [close relative's adversarial contact with criminal justice system; race-neutral basis for excusal].) Defendant argues that there is no proof that an eligibility worker is akin to a social worker, but the prosecutor thought so and our task is to evaluate the genuineness of his *subjective* reasons; moreover, the prosecutor's belief is not objectively unreasonable.

## C.   *Prospective Juror 5944*

Prospective Juror 5944 stated that she was a medical auditor, was married to a postal employee, and had three children. She also indicated that one of her family members had been murdered five years prior, and felt that the criminal justice system was "dragging [its] feet" in prosecuting the known suspect. She also stated that she had prepaid tickets for a cruise that would depart in 13 days. After the prosecutor exercised

two more peremptory challenges without objection, the prosecutor used his seventh challenge to strike Prospective Juror 5944. The defense made a *Batson/Wheeler* objection, arguing that she was African-American. The trial court observed that the juror's misgivings about the criminal justice system suggested a race-neutral reason for the strike, but found that defendant had made a prima facie case. The prosecutor offered one further reason in response—namely, that the juror would be distracted by her impending departure date. The court overruled the objection after finding the prosecutor's stated reason to be race-neutral and noting the juror's unhappiness with the criminal justice system. Both reasons are race-neutral. (See *Lenix*, *supra*, 44 Cal.4th at p. 628 [juror's "negative experience" with justice system; race-neutral basis for excusal]; *Clark*, *supra*, 52 Cal.4th at pp. 907-908 [juror's impending departure for job-related training; race-neutral basis for excusal].)

## II.     New Trial Motion

A defendant may move for a new trial following conviction. (§ 1181.) In this case, defendant filed a pro se motion for a new trial due to ineffective assistance of counsel, a violation of his right to be present at an evidentiary hearing, and insufficiency of the evidence. The trial court denied the motion. We review for an abuse of discretion (*People v. Trinh* (2014) 59 Cal.4th 216, 249), and conclude there was no abuse.

### A.     *Ineffective Assistance of Counsel*

Although claims that trial counsel was constitutionally ineffective are "properly decided in a habeas corpus proceeding rather than an appeal," such claims may be raised in a motion for new trial "when the '"issue of counsel's effectiveness can be resolved promptly at the trial level."'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 980-981, quoting *People v. Cornwell* (2005) 37 Cal.4th 50, 101.) To establish that trial counsel did not provide the effective assistance of counsel guaranteed by the Sixth Amendment, a defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) but for that ineffectiveness, it is reasonably probable that the outcome of the proceeding would have been different. (*People v. Brown* (2014)

8

59 Cal.4th 86, 109 (*Brown*); see also *Strickland v. Washington* (1984) 466 U.S. 668.) To establish the first element, a defendant must overcome the general presumption that counsel acts competently. (*Brown*, at p. 109.) Defendant cites three alleged instances of deficient representation, and we consider each separately.

### 1. Failure to obtain report from juvenile case file of defendant's son

During the testimony of one of the Sheriff's deputies who executed the search at defendant's residence, defense counsel sought to impeach the deputy on the basis of statements the deputy had made to a social worker that were in a report contained in defendant's son's juvenile dependency case file. The court precluded the questioning on two grounds: (1) counsel did not obtain the juvenile court's permission to obtain and use the report, as required by Welfare and Institutions Code section 827; and (2) the questioning was properly excluded under Evidence Code section 352, because the officer's trial testimony regarding the location of items seized from the residence was consistent with his preliminary hearing testimony and the videotape of the search, while the report contained at most the social worker's summary of the officer's statements.

We need not decide whether trial counsel was deficient for not obtaining the juvenile court's permission to use the report in the juvenile case file because it is not reasonably probable that the result of the trial would have been different. The trial court indicated its intent to preclude any questioning using the report under Evidence Code section 352 (and that ruling would have been within its discretion). Further, impeachment as to the precise location of the numerous guns, drugs, cash, and drug-dealing implements within the house would not have likely affected the jury's verdict given the pre-search videotape showing each item's location and given that those items *still would have been in the house* and that the evidence of defendant's control over the house was overwhelming.

### 2. Failure to challenge defendant's custodial statement

Although defense counsel moved to suppress defendant's station-house confession under *Miranda v. Arizona* (1966) 384 U.S. 436, defendant argues that counsel was

9

ineffective for (1) not impeaching the testifying Sheriff's deputy with his prior report as to whether he advised defendant of his *Miranda* rights on the day of his arrest, and (2) not challenging the statement as the involuntary product of coercion and promises of leniency, in violation of due process.

The first claim is without merit. During the suppression hearing, the deputy testified that he had not given defendant *Miranda* warnings on the date of his arrest, but his police report indicated that he had. However, it is not reasonably probable that impeachment on this point would have changed the trial court's ruling that the statement the defendant made *the next day* was admissible because *that* statement *was* preceded by *Miranda* warnings.

The second claim is also without merit. The due process clause bars the introduction of a confession that is "involuntary." (*People v. Weaver* (2001) 26 Cal.4th 876, 920.) As pertinent to this appeal, "'a confession is involuntary . . . if it was elicited by any promise of benefit or leniency whether express or implied.'" (*People v. Holloway* (2004) 33 Cal.4th 96, 115 (*Holloway*).) "A threat by police to arrest or punish a close relative, or a promise to free the relative in exchange for a confession, may [also] render an admission invalid." (*People v. Steger* (1976) 16 Cal.3d 539, 550.) However, it is not coercive for law enforcement to offer "'mere advice or extortion . . . that it would be better for the accused to tell the truth'" (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1401); to point out the benefits that "'"flow[] naturally from a truthful and honest course of conduct"'" (*Holloway*, at p. 115); or to summarize the evidence against a defendant and confront him with contradictory facts (*People v. Carrington* (2009) 47 Cal.4th 145, 170).

In this case, the Sheriff's deputy, during the videotaped interview, pointed out that both defendant and his mother were living in the house full of cocaine and drugs; told defendant he did not know if defendant's mother was involved and "doubt[ed]" she was; indicated that he was not trying to "put [the mother] in here"; and gave defendant "the opportunity" to tell him whether she was involved with the cocaine business. Defendant

10

replied she was not, stating, "whatever you found, . . . that's my house, it's under my name."

The questioning in this case did not cross the line from permissible techniques to coercive tactics. The interviewing officer summarized the state of the evidence, pointed out the adverse consequences to defendant and mother that could flow from those facts, and asked defendant whether his mother was involved. Contrary to what defendant urges, these questions did not amount to a threat to prosecute mother if defendant did not confess and also did not amount to a promise not to prosecute mother if defendant did confess. Any violation was, in any event, harmless beyond a reasonable doubt because the sole fruit of that confession—defendant's admission of control over the residence— was overwhelmingly established by his identification documents found in the office with the guns, drugs and cash and with the live nine-millimeter ammunition; and by the large sum of cash in his car when he was arrested. (See *People v. Jablonski* (2006) 37 Cal.4th 774, 816-817 [applying *Chapman v. California* (1967) 386 U.S. 18 standard in evaluating harmlessness of admission of involuntary statement].)

### 3. Failure to object to evidence indicating defendant's status as a felon

Defendant further contends that defense counsel was ineffective for not moving to (1) redact the videotaped statement to exclude portions alluding to defendant's prior conviction and his familiarity with the criminal justice system, and (2) exclude a photograph of the letters found in the residence which listed a Blythe prison address as defendant's return address. Such motions would have been denied in light of defendant's stipulation to his prior conviction, which was read to the jury. Counsel is not ineffective for failing to make meritless objections. (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091.)

### B. Evidentiary Hearing in Defendant's Absence

A defendant charged with a felony has a nonwaivable right to be personally present during arraignment, preliminary hearing, "those portions of the trial when evidence is taken before the trier of fact" and sentencing (§ 977, subd. (b)(1)) and a

11

waivable right to be present at all other proceedings (§§ 977, subd. (c), 1043, subd. (a)). (See also *People v. Davis* (2005) 36 Cal.4th 510, 530 [noting constitutional right to be present] (*Davis*).) Defendant argues that this right was violated, and that he is entitled to a new trial under section 1181, subdivision (1), because he was not present during an Evidence Code section 402 hearing, on the afternoon of January 24, 2014, challenging the admission of his videotaped confession under *Miranda*.

This argument is not supported by the record. The transcript for the *morning* of January 24 indicates that defendant was not present when the trial court ordered a witness to return to trial. However, the section 402 hearing occurred in the *afternoon*. Although the trial court did not state on the record who was present for the afternoon session, the court's minute order states that defendant was present; and both the court and the prosecutor indicated that they would not have conducted a section 402 hearing unless defendant had been present. Defendant has not established that he was absent. Further, in light of our conclusion that defendant's statement was admissible under *Miranda*, defendant's absence was not in any event prejudicial under *Chapman* or *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Davis*, *supra*, 36 Cal.4th at pp. 532-533 [evaluating defendant's absence from evidentiary hearing for prejudice].)

### C.     *Substantial evidence supporting defendant's convictions*

Defendant lastly argues that the trial court erred in denying his new trial motion because there was insufficient evidence that he actually or constructively possessed the cocaine and firearms. In evaluating a challenge to the sufficiency of the evidence in a new trial motion under section 1181, subdivision (6), the trial court sits as a "13th juror" and evaluates the evidence independently (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133); on appeal, we review the trial court's ruling for an abuse of discretion. (*People v. Lewis* (2001) 26 Cal.4th 334, 364.)

A defendant can be guilty of "possessing" guns or drugs if he *actually* possesses them or if he *constructively* possesses them. (*People v. Thomas* (2012) 53 Cal.4th 1276, 1284.) A person is in "constructive possession" of an item if the item is "under his

12

dominion and control, either directly or through others." (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084.) What is more, more than one person can constructively possess items at the same time. (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417.)

In this case, there was more than ample evidence that defendant constructively possessed the guns, drugs and money found in the residence. All of these items were found along with defendant's mail, his library card, his ATM card, and his California identification card—many in the same room as the drugs and AK-47. "[P]ossession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Williams* (1971) 5 Cal.3d 211, 215.) Defendant protests that his 55-year-old mother and, on occasion, his girlfriend, lived in the house, but exclusive possession, as noted above, is not required. What is more, defendant admitted in his videotaped confession that the house was his.

## III. Review of Trial Court's Ruling Denying Motion to Unseal Affidavit

When a defendant moves to suppress evidence obtained with a search warrant and the affidavit accompanying that warrant is wholly or partially filed under seal, the defendant may ask the trial court to conduct an in camera hearing at which (1) the court determines whether the sealed portions of the affidavit were properly sealed to protect official information (under Evidence Code section 1040), an informant's identity (under Evidence Code section 1041), or other applicable privilege, and, if "significant portions" of the affidavit *were* properly sealed, (2) the court decides, based on both the unsealed *and sealed* portions of the affidavit, whether there is a "reasonable probability that the defendant would prevail" on his pending motion to suppress. (*People v. Hobbs* (1994) 7 Cal.4th 948, 963, 972, 974-975 (*Hobbs*); *People v. Heslington* (2011) 195 Cal.App.4th 947, 957-959 (*Heslington*).) If the court concludes that the defendant has a "reasonable probability" of prevailing, the court may not order the prosecutor to disclose the privileged information (Evid. Code, § 1042, subd. (b)), but must put the prosecutor to a

choice:  Disclose the information *or* accept a ruling suppressing the evidence.  (*Hobbs*, at pp. 974-975; *Heslington*, at pp. 957-958 & fn. 7.)

Defendant has asked us to review the sealed portion of the affidavit and the transcript of the in camera hearing to determine whether the trial court properly followed these procedures and whether its ruling was correct.  We have reviewed these items, and independently conclude that the court followed the above-stated procedures and properly declined to order disclosure of the sealed portions of the affidavit.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
              HOFFSTADT


We concur:

_____, P.J.
        BOREN

_____, J.
      ASHMANN-GERST