Filed 9/18/25  P. v. Spelker CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B342689 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA131741) |
| v. | |
| BRYAN ADDISON SPELKER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed with directions.

Asya Ovsepyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristin J. Inberg and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Bryan Addison Spelker of four felonies, two of which involved possession of a firearm. The trial court sentenced Spelker to a total of six years in prison, including four years for one of the gun-related charges and a consecutive eight months for the other. Spelker argues, the Attorney General concedes, and we agree that the trial court should have stayed the sentence for the second gun possession-related charge under Penal Code section 654.[1]

At Spelker's request, we have also reviewed the sealed portion of a search warrant to determine whether the trial court erred in denying his motion to unseal it and to quash or traverse the warrant. We find no error in the court's denial of Spelker's motion with regard to the search warrant.

## BACKGROUND

### A. The Information

The information charged Spelker with the following crimes, which occurred on or about November 2, 2022: possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2), unlawful possession of ammunition (§ 30305, subd. (a)(1); count 3), driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a); count 4), child abuse under circumstances or conditions likely to cause great bodily injury or death (§ 273a, subd. (a); counts 5-7), and possession for sale of a controlled substance (Health & Saf. Code, § 11378; count 8). The information alleged four aggravating factors, including that his prior convictions "are numerous and of

---

[1] Unspecified statutory references are to the Penal Code.

increasing seriousness" (Cal. Rules of Court, rule 4.421(b)(2)), and further alleged that Spelker was convicted of two prior felonies pursuant to section 1203, subdivision (e)(4).

## B.  Proceedings Regarding Search Warrant

Prior to trial, Spelker filed a motion to unseal, quash, and traverse a sealed search warrant that led to his arrest, and to suppress all evidence seized thereunder. After conducting an in camera review under the procedures of *People v. Hobbs* (1994) 7 Cal.4th 948, the court denied Spelker's motion to unseal because to do so would readily identify a confidential informant. The court also denied Spelker's motion to quash or traverse the search warrant.

## C.  The Trial

### 1.  *Prosecution Evidence*

The People presented testimony from Los Angeles County Sheriff's Department Sergeant Jason Ford, Detective Raul Guerrero, deputy Thomas Wilson, and criminalist Chien Hsing Lee, as well as from the auto-theft victim.[2]

Ford testified that on November 2, 2022, he went to a home that belonged to Spelker's wife and where Spelker sometimes resided to execute a search warrant.[3] Wilson was there to assist,

---

[2] Because the appeal does not concern counts 4 through 8, we do not summarize the evidence related to those counts.

[3] Some testimony indicated that Spelker did not live at the home and he would go there only to pick up and drop off his children. However, Guerrero, who surveilled the home for several weeks, believed Spelker lived there, and Spelker told Ford and Guerrero that he lived at two locations, including his wife's home.

and Guerrero was at the location conducting surveillance. All three saw Spelker leave the home and enter a white Hyundai that was missing a front license plate. Guerrero and Wilson stopped the car and spoke with Spelker. Wilson observed that the car's ignition had been modified to allow a person to start it without the car's key and, in fact, Spelker was using a key from a different car. Wilson looked up the license plate and vehicle identification numbers, and discovered that both the plate and the car had been reported as stolen. At trial, the Hyundai owner testified her car had been stolen and she had not given Spelker permission to drive it.

Spelker told Ford and Guerrero that he wanted to cooperate and that he had a fully functional ghost gun,[4] ammunition, and about half a pound of methamphetamine located in the garage in a toolbox. Spelker later executed a *Miranda*[5] waiver on which he wrote, "The meth and gun are mine and only mine."

Ford and Guerrero conducted a walk-through of the home pursuant to the search warrant. Guerrero found the self-made gun, ammunition, and approximately 367 grams of methamphetamine in the toolbox and garage.[6]

---

[4] A ghost gun is a self-made gun assembled from gun parts.

[5] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

[6] The People also presented evidence that Ford and Guerrero found gun parts, including an upper receiver to a revolver, a lower receiver to an AR-15 rifle, and two lower receivers for handguns. Guerrero testified that the lower receiver of an AR-15 rifle is regulated and itself considered a firearm,

4

2. *Defense Evidence*

The sole defense witness, Robert Ramirez, testified that he had known Spelker for many years. He also knew Spelker's wife and periodically lived at her home. When Ramirez lived there, Spelker did not live there. Ramirez had been at the home on the nights of November 1 and 2, 2022, but was not there when law enforcement executed the search warrant. He did not know there were firearms or drugs at the home.

## D. Verdict and Sentencing

The jury found Spelker guilty of counts 1 through 4. The court declared a mistrial as to counts 5 through 8, and the People chose not to retry those counts.

At his sentencing, Spelker argued that any sentence imposed for count 2 should be stayed pursuant to section 654. The People agreed with Spelker's position and requested a sentence of five years and four months "because counts 1 and 2 would merge." The trial court disagreed that the counts merged because they had distinct elements: count 1 required possession of narcotics but not a prior felony conviction, whereas count 2 required a felony conviction but not narcotics possession. The People agreed with the court and requested that the court therefore impose a six-year prison term.

The court found true the aggravating factor that Spelker's convictions were numerous and of increasing seriousness. It did not expressly rule as to the other alleged aggravating

---

although not a fully functional firearm (i.e., not operable). Neither party argues the gun parts are relevant to their position on appeal; nor did the trial court discuss the gun parts in rendering its sentencing decision.

circumstances.  The court imposed a total prison term of six years, including the upper term of four years for count 1 and one-third the middle term of eight months for each of counts 2 through 4, to run consecutively.

## DISCUSSION

### A.    The Trial Court Erred in Not Staying the Sentence on Count 2

Section 654, subdivision (a) states, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

Spelker and the Attorney General each argue that pursuant to section 654, the trial court should have stayed the eight-month sentence under count 2.  We agree.

*People v. Washington* (2021) 61 Cal.App.5th 776 is on point. There, law enforcement executed a search warrant at a residence and found drugs and firearms.  (*Id*. at pp. 782-783.)  The jury convicted the defendant of possession of methamphetamine, cocaine, and cocaine base while armed with a revolver (counts 9, 10, & 12), possession of each of those substances for sale (counts 17, 18, & 20), and possession of a revolver by a felon (count 31).  (*Id*. at p. 785.)  The trial court sentenced the defendant to "the upper term of four years on count 9 (unlawful possession of methamphetamine while armed), a one-year consecutive term on count 17 (possession of cocaine base for sale), and an eight-month consecutive term on count 31 (possession of a firearm by a felon).  The court imposed concurrent terms on counts 10, 12, 18, and 20 . . . ."  (*Ibid*.)

*Washington* held the trial court erred.  (*People v. Washington, supra*, 61 Cal.App.5th at p. 799.)  Relying on

6

Supreme Court authority, the court explained, "The starting point of a section 654 analysis is to determine whether the 'different crimes were completed by a "single physical act." ' " (*Id.* at p. 795, citing *People v. Corpening* (2016) 2 Cal.5th 307, 311 and *People v. Jones* (2012) 54 Cal.4th 350, 358.) " 'If so, the defendant may not be punished more than once for that act.' " (*Washington, supra,* at p. 795.) " 'Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses.' " (*Ibid.*) Thus, "[the defendant]'s possession of each controlled substance constituted a single physical act that completed two offenses: (1) possession of the relevant substance for sale, and (2) possession of the relevant substance while armed." (*Id.* at p. 797.) Additionally, "[t]he jury found that [the defendant] possessed a single firearm (the revolver) when deputies found him in the garage. This single physical act completed multiple crimes: possession of each controlled substance while armed (a total of three counts), and possession of a firearm by a felon." (*Id.* at pp. 797-798.) Accordingly, under section 654, if the defendant was punished for possessing a controlled substance for sale, he could not also be punished for possessing the same substance while armed. (*Washington, supra,* at p. 799.) "Similarly, if [the defendant] is punished for the possession of a firearm by a felon, he may not also be punished for possessing any controlled substance while armed (but may be punished for possessing the substances for sale)." (*Ibid.*)

Here, like *Washington*, Spelker's possession of a firearm completed two counts: possession of a controlled substance with a

firearm, and possession of a firearm by a felon. The trial court thus erred in not staying the sentence on count 2. We therefore remand the matter with directions to stay the sentence imposed under that count.

**B.    The Trial Court Did Not Err in Denying Spelker's Motion to Unseal and to Quash or Traverse the Search Warrant**

Spelker also asks us to independently review the sealed portion of the search warrant affidavit to determine whether the trial court erred in denying his motion to unseal, and to quash or traverse the search warrant. The Attorney General does not object.

A court may seal portions of a search warrant affidavit that relate facts or information which, if disclosed in the public portion of the affidavit, will reveal or tend to reveal confidential informant identity. (*People v. Galland* (2008) 45 Cal.4th 354, 364 citing *People v. Hobbs*, *supra*, 7 Cal.4th at p. 963.) A defendant, however, may seek to challenge the legality of the search warrant. (*Hobbs*, *supra*, at p. 957.) When a defendant moves to unseal the search warrant in order to quash or traverse the warrant, a court should conduct an in camera review of the sealed materials. (*Id.* at pp. 971-972.)

At the in camera hearing, the court's first step is to determine whether the affidavit or portion of it has been properly sealed. (*People v. Hobbs*, *supra*, 7 Cal.4th at p. 972.) During this step the court should determine "whether there are sufficient grounds for maintaining the confidentiality of the informant's identity" and, "[i]f so, . . . whether the sealing of the affidavit (or any portion thereof) 'is necessary to avoid revealing the

8

informant's identity.' " (*People v. Galland*, *supra*, 45 Cal.4th at p. 364; *Hobbs*, *supra*, at p. 972.)

If the affidavit was properly sealed, the court then considers the second step, which differs based on whether the defendant has moved to traverse or quash the warrant. If "the defendant has moved to traverse the warrant, the court should then proceed to determine whether . . . the affidavit included a false statement made 'knowingly and intentionally, or with reckless disregard for the truth,' and . . . 'the allegedly false statement is necessary to the finding of probable cause.' " (*People v. Hobbs*, *supra*, 7 Cal.4th at p. 974.) If the defendant has moved to quash the warrant, "the court should proceed to determine whether, under the 'totality of the circumstances' presented in the search warrant affidavit and the oral testimony, if any, presented to the magistrate, there was 'a fair probability' that contraband or evidence of a crime would be found in the place searched pursuant to the warrant." (*Id.* at p. 975.) For either motion, if the court determines there is a reasonable probability the defendant will prevail on the motion, "[t]he People may either (1) consent to full disclosure of the sealed materials, in which case the motion proceeds 'to decision with the benefit of this additional evidence, and a further evidentiary hearing if necessary,' or (2) refuse to disclose the confidential information, in which case the court *must* grant the defendant's motion." (*People v. Heslington* (2011) 195 Cal.App.4th 947, 957-958.)

"We independently review the court's decision to seal a portion of the search warrant affidavit." (*People v. Camel* (2017) 8 Cal.App.5th 989, 1009.)

Having reviewed the sealed portion of the search warrant affidavit, we find no error in the trial court's denial of Spelker's

9

motion.[7]  Sufficient grounds support maintaining the confidentiality of the informant's identity and unsealing the information would tend to reveal that identity.  Moreover, there is no probability that Spelker would have prevailed on his motion to traverse or quash the warrant.  Nothing in the affidavit suggests any material misrepresentations or omissions were made.  Further, the totality of the information set forth in the affidavit supported a fair probability that execution of the warrant would lead to contraband or evidence of a crime at the location to be searched.

---

[7] The superior court provided a copy of the sealed search warrant affidavit to this court on September 11, 2025.  We ordered the Court of Appeal record augmented to include this document.

## DISPOSITION

The matter is remanded for the trial court to modify the judgment to stay the sentence imposed on count 2.  The court shall ensure that an amended abstract of judgment is prepared and a certified copy is forwarded to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.


11